IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEST BAY BUILDERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITIED STATES,<br><br>Defendant, | No. 04-1140C<br>(Judge G. Miller) |

**DECLARATION OF KURTIS VIERRA IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Kurtis Vierra, pursuant to 28 U.S.C. § 1746, declares:

1. I hereby make this Declaration based upon personal knowledge in support of Plaintiff's Motion for Summary Judgment.

2. I was West Bay Builders Inc.'s ("West Bay") project manager on a public work of improvement known as the Renovation of Interior Finish of Building 90 of the Veterans Affairs Palo Alto Health Care System, Livermore Division (the "Project"). I was responsible for the completion of the Project and compliance with the contract documents.

3. On September 25, 2001, West Bay submitted a signed offer to the VA Northern California Health Care System ("the VA") to perform an extensive remodel of a multistory building with residential units, offices, kitchens and medical facilities. The VA's solicitation required the contractor to perform "general construction, selected demolition, alterations, mechanical and electrical work, utility systems, necessary removal of existing asbestos, and other items." On November 11, 2001, the VA accepted West Bay's proposal in the amount of

$1,267,000.00. A true and correct copy of the signed the VA's "Solicitation Offer and Award" is attached hereto as Exhibit "A".

4. Section 09800 of the contract specifications for the Project governs the application of floor concrete moisture sealant. A true and correct copy of Section 09800 of the Contract Specifications for the Project, its addendums and amendments, are attached hereto as Exhibit "B".

5. West Bay performed calcium chloride tests on the floors for the Project in accordance with contract specifications stated under Paragraphs 1.02A, 1.06, and 2.02. A true and correct copy of the calcium chloride test data from the test administered by West Bay is attached hereto as Exhibit "C".

6. As indicated by Exhibit "C," the moisture emission level for the floors on the Project is 7.52 pounds and 4.58 pounds over a 1,000 square foot area during a twenty-four hour period.

7. West Bay also hired Floor Seal Technologies, to perform calcium chloride test on the floors for the Project in accordance with contract specifications. A true and correct copy of the calcium chloride test data from the test administered by Floor Sealant Technologies is attached hereto as Exhibit "D".

8. As indicated by Exhibit "D", four sets of tests were administered by Floor Seal Technology on April 26, 2002. The four sets of test data from the calcium chloride test administered by Floor Seal Technology showed that the moisture emission levels for the floors on the Project over a 1,000 square foot

area during a twenty-four hour period is 8.0 pounds, 9.8 pounds, 8.0 pounds, and 9.3 pounds for each respective test.

9. Unbeknown to West Bay, Floor Seal Technology, was also hired by the VA as a consultant on the Project prior to bid, performed calcium chloride test to determine moisture emission levels on the floors of the Project. As shown by Exhibit "D," these test results, dated July 23, 1999, indicated that the moisture emission level for the floors was 12.1 pounds, 2.7 pounds, 14.4 pounds, 9.8 pounds and 7.8 pounds over a 1,000 square foot area during a twenty-four hour period. These test results were later provided to West Bay by Floor Seal Technology after the bid.

10. Based on my reading of the specifications and all the addendum and the data from the tests administered by West Bay, I wrote a letter to Mel Koenig, the Contracting Officer for the VA on the Project, on April 30, 2002, indicating that it is West Bay's position that the test results are well under the threshold level in the specification for the application of sealant to the entire floor areas of the Project. A true and correct copy of the April 30, 2002 letter is attached hereto as Exhibit "E".

11. On May 2, 2002, Mr. Koenig responded to my April 30, 2002 letter with the VA's formal directive to West Bay to proceed with the application of sealant. In this May 2, 2002 letter, Mr. Koenig referenced an electronic mail dated May 2, 2002 from Armando Binsol. A true and correct copy of the May 2, 2002 letter and the May 2, 2002 electronic mail are attached hereto as Exhibit "F".

12. Both Mr. Binsol's electronic mail and Mr. Koenig's letter dated May 2, 2002 spelled out the VA's position that West Bay should utilize old test data from 1999, which had only one of the five tests indicating the emission level to be 14.4 pounds, instead of the current test data on the existing emission level.

13. Mr. Koenig's May 2, 2002 letter further indicated that it was the VA's position that Amendment #4 "established the level of sealant required at 15 pounds."

14. Mr. Koenig's May 2, 2002 letter also contended that West Bay's approved schedule of value included time allocated for sealant application.

15. On May 2, 2002, Paul Thompson, the President of West Bay, submitted a claim to the VA for additional contract costs incurred for extra work in the amount of $157,681.00 pursuant to the formal directives and a time extension for thirty days. A true and correct copy of the claim titled "Change Proposal Estimate #3" is attached hereto as Exhibit "G".

16. The claim for extra work outlined in Change Proposal Estimate #3 was based on the cost estimates provided by Surface Solution Innovations 2000, a company that was considered by West Bay to perform the application of sealant on the Project. A true and correct copy of the estimates provided by Surface Solution Innovations 20002 is attached hereto as Exhibit "H".

17. On May 2, 2002, Mr. Thompson also responded to the VA's formal directive with a letter, stating that nowhere in the contract specifications required West Bay to use test data from 1999. In this letter, Mr. Thompson also stated that West Bay did allow for a very minimal amount of time in its schedule for the

allocation of the floor moisture sealant in the amount of $ 8,000.00, because any new concrete patches would require moisture sealant. The $8,000 figure quoted by Mr. Thompson in his letter was inaccurate, and the figure was promptly corrected by my letter to Mr. Koenig, dated May 3, 2002, to $2,000, which was the correct figure in West Bay's schedule of values. A true and correct copy of Mr. Thompson's May 2, 2002 letter is attached hereto as Exhibit "I". A true and correct copy of my May 3, 2002 letter is attached hereto as Exhibit "J".

18. On May 9, 2002, the VA, through Mr. Koenig, issued its second formal directive to proceed to West Bay to apply floor moisture sealant on the entire floor of the Project. In the May 9, 2002 formal directive, Mr. Koenig reiterated the VA's position that Amendment #4 required the contractor to "use 15 pounds of vapor pressure as the existing level for all floor surfaces." A true and correct copy of the VA's May 9, 2002 formal directive is attached hereto as Exhibit "K".

19. On June 10, 2002, West Bay submitted a revised "Change Proposal Estimate #3.2" to the VA, reflecting the corrected actual price for the application of floor moisture sealant on the entire floor of the Project. A true and correct copy of Change Proposal Estimate #3.2 is attached hereto as Exhibit "L".

20. The claim for extra work outlined in Change Proposal Estimate #3.2 was based on the cost proposal provided by Floor Seal Technology, the actual subcontractor hired by West Bay to perform the application of sealant on the Project. A true and correct copy of the proposal provided by Floor Seal Technology is attached hereto as Exhibit "M".

21. On January 8, 2003, Mr. Koenig issued me an "Amendment of Solicitation/Modification of Contract" that approved West Bay's claim for floor moisture sealant application in the amount of $128,279.20. A true and correct copy of Mr. Koenig's January 8, 2003 letter and the "Amendment of Solicitation/Modification of Contract" is attached hereto as Exhibit "N".

22. On January 15, 2003, I wrote a letter to Mr. Koenig, informing him that the VA had failed to address the requested time extensions in its "Amendment of Solicitation/Modification of Contract". A true and correct copy of my January 15, 2003 letter is attached hereto as Exhibit "O".

23. On April 4, 2003, Mr. Koenig responded to my January 15, 2003 letter. In his April 4, 2003 letter, Mr. Koenig rescinded the VA's "Amendment of Solicitation/Modification of Contract" and gave West Bay a offer to settle the claim in the amount of $64,140.00. Mr. Koenig also articulated a different reason for rejecting West Bay's claim, stating that the VA's legal counsel has determined that contract specifications contain an alleged "patent ambiguity" with regards to the necessity for sealing the floor, and it was allegedly the contractor's responsibility to raise the issue with the VA prior to submitting a bid. VA's previous rationales for issuing the formal directive to West Bay to perform the extra work were dropped. A true and correct copy of Mr. Koenig's April 4, 2003 letter is attached hereto as Exhibit "P".

24. On April 7, 2007, I issued a letter to Mr. Koenig, which stated that West Bay declined the VA's final offer and requested a final decision from Mr.

Koenig pertaining to West Bay's claim. A true and correct copy of my April 7, 2007 letter is attached hereto as Exhibit "Q".

25. On July 7, 2003, the VA issued its "Final Decision of the Contracting Officer," denying West Bay's claim in its entirety. The basis of the VA's "Final Decision" appears to be that the specification required West Bay to assume 15 pounds as the moisture emission level for the floors of the Project. A true and correct copy of the Final Decision is attached hereto as Exhibit "R". The sealant work was performed in stages and completed in April 1, 2003.

26. West Bay incurred costs for the extra work performed pursuant to the VA's directive to apply floor sealant. West Bay incurred additional labor and material costs, as a result of the VA's failure to pay West Bay for the extra work performed. West Bay requested payment in the total amount of $128,833.00 from the VA on June 10, 2002, as detailed in West Bay's Change Order Proposal Estimate 3.2, attached hereto as Exhibit "L". To date, the VA has failed to pay West Bay for the extra work.

27. The total interest incurred on the principal sum, from June 1, 2003 to September 1, 2007, at the rate of 10 percent per annum, is $54,754.02.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on the 7th day of September, 2007 at Alameda, California.

Kurtis Vierra

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2007, I electronically filed the foregoing Declaration, including the attached Exhibits, with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Tara Kathleen Hogan**
**Paul Reid Wellons**
U. S. Department of Justice
Civil Division- Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530
(202) 307-1011
(202) 514-8624 (fax)
tara.hogan@usdoj.gov
paul.wellon@usdoj.gov

/s/ Timothy L. McInerney
Timothy L. McInerney