IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEST BAY BUILDERS, INC.,<br>Plaintiff,<br>v.<br>THE UNITIED STATES,<br>Defendant, | No. 04-1140C<br>(Judge G. Miller) |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS SUPPORTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff proposes the following Findings of Uncontroverted Facts supporting Plaintiff's Motion for Summary Judgment:

1. On November 11, 2001, Veterans Affairs Northern California Health Care System ("the VA") entered into a contract with West Bay Builders ("West Bay"), for the construction of the Project known as "Renovate Interior Finish Bldg 90 at the VA Palo Alto Health Care System, Livermore Division" (the "Project") for $1,267,000. Declaration of Kurtis Vierra in Support of Motion for Summary Judgment ("Vierra Decl.") ¶3; Exhibit A to Vierra Decl.

2. The Project required "general construction, selected demolition, alterations, mechanical and electrical work, casework, utility systems, necessary removal of existing asbestos and certain other items" to a multistory building with residential units, offices, kitchen and medical facilities. Vierra Decl. ¶3; Exhibit A to Vierra Decl.

\\\

\\\

3. Paragraph 1.02.A of Section 09800 of the Contract Specifications for the Project states:

> "1.02 System Description
>
> The system shall consist of treatments designed to control alkalinity, and to reduce vapor emission to specified, measurable, compliance levels.
>
> A. The system shall reduce emission levels to within 3.0 lbs, and should be installed in all cases where the starting calculation is 15.0 lbs or more."

Vierra Decl. ¶4; Exhibit B to Vierra Decl.

4. West Bay performed calcium chloride tests on the floors of the Project, and the results, dated April 22, indicated that the moisture emission level for the floors on the Project is 7.52 pounds and 4.58 pounds. Vierra Decl. ¶¶ 5, 6; Exhibit C to Vierra Decl.

5. Unbeknown to West Bay, Floor Seal Technology, hired by the VA as a consultant on the Project prior to bid, performed calcium chloride test to determine moisture emission levels on the floors of the Project. These test results, dated July of 1999, indicated that the moisture emission level for the floors is 12.1 pounds, 2.7 pounds, 14.4 pounds, 9.8 pounds and 7.8 pounds. These test results were later provided to West Bay by Floor Sealant Technology. Vierra Decl. ¶9; Exhibit D to Vierra Decl.

6. West Bay later hired Floor Seal Technology to determine the actual moisture level for the floors of the Project in April of 2002. These test results, dated April 26, 2002, indicated that the moisture emission level for the floors is

8.0 pounds, 9.8 pounds, 8.0 pounds, and 9.3 pounds. Vierra Decl. ¶7; Exhibit D to Vierra Decl.

7. On April 30, 2002, Mr. Kurtis Vierra, West Bay's project manager at the Project, wrote a letter to Mr. Mel Koenig, the VA's contracting officer, stating that West Bay would not apply the floor concrete moisture sealant to the entire floor area of the Project based on the test results administered on the Project dated April 22, 2002. Vierra Decl. ¶10; Exhibit E to Vierra Decl.

8. On May 2, 2002, Mr. Koenig responded to Mr. Vierra's letter with the VA's formal directive for West Bay to proceed with the application of moisture sealant to the entire floor area of the Project at no additional cost to the VA. Vierra Decl. ¶11; Exhibit F to Vierra Decl.

9. Mr. Koenig's May 2, 2002 letter contained a reference to an electronic mail, dated May 2, 2002, authored by Armando Binsol. Mr. Binsol's electronic mail stated that West Bay should utilize old test data from 1999, which had one of the five tests indicating the emission level to be 14.4 pounds, instead of the current test data on the existing emission level. Vierra Decl. ¶11 and ¶12; Exhibit F to Vierra Decl.

10. Mr. Koenig's May 2, 2002 letter stated, "Apparently, the level encountered is now revised to 14.4 lbs per his email with a final sealant result brining the level down to 3 lbs as before." Vierra Decl. ¶12; Exhibit F to Vierra Decl.

11. Mr. Koenig's May 2, 2002 letter stated, "…and Amendment #4 which established the level of sealant required at 15 lbs to be brought down to a maximum of 3 pounds." Vierra Decl. ¶13; Exhibit F to Vierra Decl.

12. Amendment #4 modified Paragraph 3.01 (E) of Section 09800 to now read:

> Based upon the results of the test data as described in section 1.03 (B), determine the level of remediation required. Such information must be obtained from the manufacturers of the products specified for the finished floor system (use 15 lbs).

Exhibit B to Vierra Decl.

13. Mr. Koenig's May 2, 2002 letter stated, "It has also been noted that your approved schedule provides time for scalant application. If you felt that sealant was not required why did you schedule time for its application in your approved schedule?" Vierra Decl. ¶14; Exhibit F to Vierra Decl.

14. On May 2, West Bay submitted "Change Proposal Estimate #3" to the VA to account for the additional costs incurred pursuant to the VA's May 2 formal directive and time extension for thirty days. This claim for the extra work was based on the cost estimates provided by Surface Solution Innovations 2000. Viera Decl. ¶¶15, 16; Exhibit G and Exhibit H to Vierra Decl.

15. On May 2, 2002, Mr. Thompson responded to Mr. Koenig's May 2, 2002 letter and the VA's formal directive. Mr. Thompson stated:

> …West Bay Builders did allow for a minimal amount of time in our schedule for the application of the sealant control treatment. This duration was based on the fact that any new concrete patches would require this moisture control sealant. This specification is found often in new construction of school in which the contractor may have excessive moisture levels in the newly placed concrete. If the moisture level exceeds certain levels then we will install the moisture sealant. When I bid your project we anticipated that there might be some concrete "patching" which would have excessive moisture

> level. Please review our schedule of values which has a total value of $8,000.00 for the sealing work of all phases—hardly equal to the attached CPE. Furthermore could you please read section 09800 and tell me where it indicates that West Bay Builders is obligated to seal the entire project. The attached memo states moisture test for the work required cannot be based on "current" test result- this statement makes absolutely no sense. Should we use test results from when they constructed the building fifty years ago? The memo also states that the independent test conducted in 1999 showed test results of 14.4 pounds of moisture. Could you please indicate where in the contract documents that we should use test results, which are three years old, as the basis for determining if the moisture sealant is required.

Vierra Decl. ¶17; Exhibit I to Vierra Decl.

16. On May 3, Mr. Vierra wrote a letter to Mr. Koenig, correcting the figure quoted by Mr. Thompson in Mr. Thompson's May 2, 2002 letter to $2,000, which is the correct figure contained in West Bay's schedule of values. Vierra Decl. ¶17; Exhibit J to Vierra Decl.

17. Paragraph 1.06 of Section 09800 states:

> "1.06 Quantification Testing
>
> A. Testing shall be conducted with calcium choloride test kits using the following test schedule: Minimum of 3 kits for up to one thousand square feet; and an additional test kit for each ensuing thousand square feet or portion thereof. Kits shall be placed in either a rectangular or cross-diagonal pattern. Procedures must be in strict accordance with ASTM S 1869-98."

Exhibit B to Vierra Decl.

18. Section 2.02 A of Section 09800 states:

> "2.02 Preparation

> A. The extent of moisture vapor emission levels shall be determined by the use of prepackaged calcium chloride dome test kits, administered by independent laboratory or competent contractor or inspector. Tests will not be conducted by system manufacturer, it's affiliates or agents. Results of tests must be expressed in pounds of moisture vapor emitted per 24 hours in a 1,000 square foot area. In addition, measurements must be taken in the anticipated service environment. Since this testing requires 60 to 72 hours, such time must be planned into the schedule."

Exhibit B to Vierra Decl.

19. the VA, through Mr. Koenig's letter dated May 9, 2002, issued its second formal directive to West Bay for West Bay to apply moisture sealant to the entire floor areas of the Project. The May 9, 2002 letter states:

> Please consider this letter to be formal direction to proceed with floor moisture vapor sealing of the entire area being renovated by West Bay Builders under the current contract. For purposes of the sealing application it was the intent of the the VA to indicate in the contract (via amendment #4) that the successful bidder on this project was to use 15 lbs of vapor pressure as the existing level for all floor surfaces…

Vierra Decl. ¶18; Exhibit K to Vierra Decl.

20. On June 10, 2002, West Bay submitted a revised "Change Proposal Estimate #3.2" to the VA, reflecting the corrected actual price for the application of floor moisture sealant on the entire floor of the Project. Vierra Decl. ¶19; Exhibit L to Vierra Decl.

21. The claim for extra work outlined in Change Proposal Estimate #3.2 was based on the cost proposal provided by Floor Seal Technology, the actual subcontractor hired by West Bay to perform the application of sealant on the Project. Vierra Decl. ¶20; Exhibit M to Vierra Decl.

22. On January 8, 2003, Mr. Koenig wrote a letter to Mr. Vierra. Enclosed in the letter is an “Amendment of Solicitation/Modification of Contract,” dated January 8, 2003, that approved West Bay’s claim for floor moisture sealant application in the amount of $128,279.20. Mr. Koenig’s January 8, 2003 letter stated, “A lengthy review of the merit of your claim has resulted in an interpretation of the contract provisions which is favorable to West Bay Builders.“ Vierra Decl. ¶21; Exhibit N to Vierra Decl.

23. The January 8, 2003 “Amendment of Solicitation/Modification of Contract” states in Paragraph 14.a: “This supplemental Agreement is to provide full consideration to West Bay Builders as a result of a Government direction on 3 May 2002 and 9 May 2002 to seal approximately 32,000 square feet of concrete sub-flooring to a maximum measured vapor pressure of 3 lbs assuming an existing condition of 15 lbs vapor pressure throughout.” The January 8, 2003 Amendment further states in 14.c: “The negotiated total price for the sealant effort is $128,279.20.” Vierra Decl. ¶21; Exhibit N to Vierra Decl.

24. On January 15, 2003, Mr. Vierra wrote a letter to Mr. Koenig. Mr. Vierra’s letter stated that “it is clear that there is no provision for the requested extension of time…the current schedule is tracking a total of 23 working days for this work.” Vierra Decl. ¶22; Exhibit O to Vierra Decl.

25. On April 4, 2003, Mr. Koenig responded to Mr. Vierra’s January 15, 2003 letter. In his April 4, 2003 letter, Mr. Koenig rescinded the VA’s “Amendment of Solicitation/Modification of Contract” and gave West Bay a final offer to settle the claim in the amount of $64,140.00. Mr. Koenig also articulated a different reason

for rejecting West Bay's claim, stating that "A further review of your claim by the VA Legal Counsel has resulted in a determination that the Government contract specifications contained a 'patent ambiguity' with regards to the necessity for sealing the floors. Essentially this means if our specifications are ambiguous and do not adequately address standard industry practice then it is incumbent upon the contractor to raise the issue with the Government prior to submitting a bid." Vierra Decl. ¶23; Exhibit P to Vierra Decl.

26. On April 7, 2007, Mr. Vierra issued a letter to Mr. Koenig, which stated that West Bay declined the VA's final offer and requested a final decision from Mr. Koenig pertaining to West Bay's claim. Vierra Decl. ¶24; Exhibit Q to Vierra Decl.

27. On July 7, 2003, the VA issued its "Final Decision of the Contracting Officer," denying West Bay's claim in its entirety, because the the VA's new interpretation of the specification required West Bay to assume 15 pounds of moisture emission level prior to sealant application. Vierra Decl. ¶25; Exhibit R to Vierra Decl.

28. The sealant work was performed in phases and completed in April 2003. Vierra Decl. ¶25.

29. West Bay incurred costs for the extra work performed pursuant to the VA's directive to apply floor sealant. West Bay incurred additional labor and material costs, as a result of the VA's failure to pay West Bay for the extra work performed. West Bay requested payment in the total amount of $128,833.00 from the VA on June 10, 2002, as detailed in West Bay's Change Order Proposal

Estimate 3.2, attached hereto as Exhibit "L". To date, the VA has failed to pay West Bay for the extra work. Vierra Decl. ¶26; Exhibit "L" to Vierra Decl.

30. The total interest incurred on the principal sum, from June 1, 2003 to September 1, 2007, at the rate of 10 percent per annum, is $54,754.02. Vierra Decl. ¶27.

Respectfully submitted,

/s/ Timothy L. McInerney

Timothy L. McInerney
McInerney & Dillon PC
1999 Harrison Street
Oakland, CA 94612
(510) 465-7100
(510) 465-8556

Attorneys for Plaintiff

Dated: September 7, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2007, I electronically filed the foregoing Proposed Findings of Uncontroverted Facts with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Tara Kathleen Hogan**
**Paul Reid Wellons**
U. S. Department of Justice
Civil Division- Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530
(202) 307-1011
(202) 514-8624 (fax)
tara.hogan@usdoj.gov
paul.wellon@usdoj.gov

/s/ Timothy L. McInerney
Timothy L. McInerney