IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEST BAY BUILDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1140C |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANTS'S RESPONSE
TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, the defendant, the United States, respectfully submits its responses to plaintiffs' proposed findings of uncontroverted fact, dated September 18, 2007, as follows:

1. On November 11, 2001, Veterans Affairs Northern California Health Care System ("the VA") entered into a contract with West Bay Builders ("West Bay"), for the construction of the Project known as "Renovate Interior Finish Bldg 90 at the VA Palo Alto Health Care System, Livermore Division" ( the "Project") for $1,267,000. Declaration of Kurtis Vierra in Support of Motion for Summary Judgment (Vierra Decl.") ¶3; Exhibit A to Vierra Decl.

RESPONSE:

Admit, except that the contract was entered into on or around November 20, 2001. See Ex. A to Vierra Decl., p.3.[1]

[1] The exhibits to the Vierra declaration, attached as an appendix to plaintiff's motion for summary judgment are not page-numbered. Page numbers refer to chronological order.

2. The Project required "general construction, selected demolition, alterations, mechanical and electrical work, casework, utility systems, necessary removal of existing asbestos and certain other items" to a multistory building with residential units, offices, kitchen and medical facilities. Vierra Decl. ¶3; Exhibit A to Vierra Decl.

RESPONSE:

Admit that the work included, but was not limited to, "general construction, selected demolition, alterations, mechanical and electrical work, casework, utility systems, necessary removal of existing asbestos and certain other items." See Exhibit A to Vierra Decl., p. 1.

3. Paragraph 1.02.A of Section 09800 of the Contract Specifications for the Project states:

> "1.02 System Description
>
> The system shall consist of treatments designed to control alkalinity, and to reduce vapor emission to specified, measurable, compliance levels.
>
> A. The system shall reduce emission levels to within 3.0lbs, and should be installed in all cases where the starting calculation is 15.0 lbs or more."

Vierra Decl.¶ 4; Exhibit B to Vierra Decl.

RESPONSE:

Admit.

4. West Bay performed calcium chloride tests on the floors of the Project, and the results, dated April 22, [2002] indicated that the moisture emission level for floors on the Project is 7.52 pounds and 4.58 pounds. Vierra Decl. ¶¶ 5, 6; Exhibit C to Vierra Decl.

RESPONSE:

Admit.

5. Unbeknown [sic] to West Bay, Floor Seal Technology, hired by the VA as a consultant on the Project prior to bid, performed calcium chloride test to determine moisture emission levels on the floors of the Project. These test results, dated July of 1999, indicated that the moisture emission level for the floors is 12.1 pounds, 2.7 pounds, 14.4 pounds, 9.8 pounds and 7.8 pounds. These test results were later provided to West Bay Floor Sealant Technology. Vierra Decl. ¶ 9; Exhibit D to Vierra Decl.

RESPONSE:

Admit.

6. West Bay later hired Floor Seal Technology to determine the actual moisture level for the floors of the Project in April of 2002. These test results, dated April 26, 2002, indicated that the moisture emission level for the floors is 8.0 pounds, 9.8 pounds, 8.0 pounds, and 9.3 pounds. Vierra Decl. ¶7; Exhibit D to Vierra Decl.

RESPONSE:

Admit.

7. On April 30, 2002, Mr. Kurtis Vierra, West Bay's project manager at the Project, wrote a letter to Mr. Mel Koenig, the VA's contracting officer, stating that West Bay would not apply the floor concrete moisture sealant to the entire floor area of the Project based on the test results administered on the Project dated April 22, 2002. Vierra Decl. ¶10; Exhibit E to Vierra Decl.

RESPONSE:

Admit that on April 30, 2002, Mr. Vierra wrote a letter stating, among other things, that it was

"[West Bay's] position that the scope outlined in section 09800 is not required."

8. On May 2, 2002, Mr. Koenig responded to Mr. Vierra's letter with the VA's formal directive for West Bay to proceed with the application of moisture sealant to the entire floor area of the Project at no additional cost to the VA. Vierra Decl. ¶11; Exhibit F to Vierra Decl.

RESPONSE:

Admit to the extent that Exhibit F supports this fact; deny as to West Bay's characterization of the letter.

PROPOSED FINDING:

On May 2, 2002, Mr. Koenig directed West Bay by letter "to proceed with sealing immediately." Ex. F to Vierra Decl., p. 1.

9. Mr. Koenig's May 2, 2002 letter contained a reference to an electronic mail, dated May 2, 2002, authored by Armando Binsol. Mr. Binsol's electronic mail stated that West Bay should utilize old test data from 1999, which had one of five tests indicating the emission level to be 14.4 pounds, instead of the current test data on the existing emission level. Vierra Decl.¶11 and ¶12; Exhibit F to Vierra Decl.

RESPONSE:

Admit.

10. Mr. Koenig's May 2, 2002 letter stated, "Apparently, the level encountered is now revised to 14.4 1bs per his email with a final sealant result bringing the level down to 3 lbs as before." Vierra Decl. ¶12; Exhibit F to Vierra Decl.

RESPONSE:

Admit.

11. Mr. Koenig's May 2, 2002 letter stated, ". . . and Amendment #4 which established the level of sealant required at 15lbs to be brought down to a maximum of 3 pounds."

Vierra Decl.¶13; Exhibit F to Vierra Decl.

RESPONSE:

Admit that this quotation accurately reflects a portion of the letter West Bay sent to VA.

12. Amendment #4 modified paragraph 3.01 (E) of Section 09800 to now read:

> Based upon the results of the tests data as described in section 1.03 (B), determine the level of remediation required. Such information must be obtained from the manufacturers of the products specified for the finished floor system (use 15 lbs).

Exhibit B to Vierra Decl.

RESPONSE:

Deny this proposed finding on the grounds that Plaintiff's Proposed Finding of Fact ¶ 12 does not accurately reflects the actual language of Amendment #4.

PROPOSED FINDING OF FACT:

Amendment #4 to the solicitation, issued September 18, 2001, provided the following:

A. Reason for amendment: To correct specifications

B. Change Section 9800-Special Coatings-Floor Concrete Moisture Sealant-page 09800-339, Paragraph 3.01-(E), Examination and preparation, from as reads "Section 1.06, to read Section 1.03(B) . . ." (Use 15 lbs). Ex. B to Vierra Decl., p. 5.

13. Mr. Koenig's May 2, 2002 letter stated, "It has also been noted that your approved schedule provides time for sealant application. If you felt that sealant was not required why did

you scheduled time for its application in your approved schedule?" Vierra Decl. ¶14; Exhibit F to Vierra Decl.

RESPONSE:

Admit that this quotation accurately reflects a portion of the letter the CO sent to West Bay.

14. On May 2, West Bay submitted "Change Proposal Estimate #3" to the VA to account for the additional costs incurred pursuant to the VA's May 2 formal directive and time extension for thirty days. This claim for extra work was based on the cost estimates provided by Surface Solution Innovations 2000. Vierra Decl. ¶¶15, 16; Exhibit G and Exhibit H to Vierra Decl.

RESPONSE:

Admit that on May 2, 2002, West Bay submitted "Change Proposal Estimate #3" for what West Bay deemed "shotblast and seal floors where moisture test does not exceed the 15 lbs threshold identified in specifications." Ex. G to Vierra Decl., p. 1. Admit that the cost estimate was based on an estimate provided by Surface Solution Innovations. Deny that this was a claim for "extra work" as whether this work was required under the contact is a matter of law, not a finding of fact.

15. On May 2, 2002, Mr. Thompson responded to Mr. Koenig's May 2, 2002 letter and the VA's formal directive. Mr. Thompson stated:

> ...West Bay Builders did allow for a minimal amount of time in our schedule for the application of the sealant control treatment. This duration was based on the fact that any new concrete patches would require this moisture control sealant. This specification is found often in new construction of school in which the contractor may have excessive moisture levels in the newly placed concrete. If the moisture level exceeds certain levels then we will install the moisture sealant. When I bid your project we anticipated that there might be some concrete "patching" which would have excessive moisture level. Please review our schedule of values which has a

> total value of $8000.00 for the sealing work of all phases—hardly equal to the attached CPE. Furthermore could you please read section 09800 and tell me where it indicates that West Bay Builders is obligated to seal the entire project . The attached memo states moisture test for the work required cannot be based on "current" test result- this statement makes absolutely no sense. Should we use test results from when they constructed the building fifty years ago? The memo also states that the independent test conducted in 1999 showed test results of 14.4 pounds of moisture. Could you please indicate where in the contract documents that we should use test results, which are three years old, as the basis for determining if the moisture sealant is required.

Vierra Decl. ¶17; Exhibit I to Vierra Decl.

<u>RESPONSE:</u>

Admit that this quotation accurately reflects a portion of the letter West Bay sent to VA.

16. On May 3, Mr. Vierra wrote a letter to Mr. Koenig, correcting the figure quoted by Mr. Thompson in Mr. Thompson's May 2, 2002 letter to $2,000, which is the correct figure contained in West Bay's schedule of values. Vierra Decl. ¶17; Exhibit J to Vierra Decl.

<u>RESPONSE:</u>

Admit.

17. Paragraph 1.06 of Section 09800 states:

> "1.06 Quantification Testing
>
> A. Testing shall be conducted with calcium chloride test its using the following test schedule: Minimum of 3 kits for up to one thousand square feet; and an additional test kit for ensuing thousand square feet or portion thereof. Kits shall be placed in either a rectangular or cross-diagonal pattern. Procedures must be in strict accordance with ASTM S 1869-98."

Exhibit B to Vierra Decl.

<u>RESPONSE:</u>

Admits that this is an accurate excerpt of Section 09800 of the contract specifications.

18. Section 2.02 A of Section 09800 states:

> "2.02 Preparation
>
> A. The extent of moisture vapor emission levels shall be determined by the use of prepackaged calcium chloride dome test kits, administered by independent laboratory or competent contractor or inspector. Tests will not be conducted by system manufacture, it's affiliates or agents. Results of tests must be expressed in pounds of moisture vapor emitted per 24 hours in a 1,000 square foot area. In addition, measurements must be taken in the anticipated service environment. Since this testing requires 60 to 70 hours, such time must be planned into schedule."

Exhibit B to Vierra Decl.

<u>RESPONSE:</u>

Admit that this is an accurate excerpt of Section 09800 of the contract specifications.

19. The VA through Mr. Koenig's letter dated May 9, 2002, issued its second formal directive to West Bay for West Bay to apply moisture sealant to the entire floor areas of the Project. The May 9, 2002 letter states:

> Please consider this letter to be formal direction to proceed with floor moisture vapor sealing of the entire area being renovated by West Bay Builders under the current contract. For purposes of the sealing application it was the intent of the VA to indicate in the contract ( via amendment #4) that the successful bidder on this project was to use 15lbs of vapor pressure as the existing level for all surfaces...

Vierra Decl.¶18; Exhibit K to Vierra Decl.

<u>RESPONSE:</u>

Admit that this quotation accurately reflects a portion of the letter sent by the contracting officer to West Bay.

20. On June 10, 2002, West Bay submitted a certified "Change Proposal Estimate #3.2" to the VA, reflecting the corrected actual price for the application of floor moisture sealant on the

entire floor of the Project. Vierra Decl. ¶19; Exhibit L to Vierra Decl.

RESPONSE:

Admit.

21. The certified claim for work outlined in Change Proposal Estimate #3.2 was based on the cost proposal provided by Floor Seal Technology, the actual subcontractor hired by West Bay to perform the application of sealant on the Project. Vierra Decl. ¶20; Exhibit M to Vierra Decl.

RESPONSE:

Admit.

22. On January 8, 2003, Mr. Koenig wrote a letter to Mr. Vierra. Enclosed in the letter is [sic] an "Amendment of Solicitation/Modification of Contract," dated January 8, 2003, that approved West Bay's claim for floor moisture sealant application in the amount of $128,279.20. Mr. Koenig's January 8, 2003 letter stated, "A lengthy review of the merit of your claim has resulted in an interpretation of the contract provisions which is favorable to West Bay Builders." Vierra Decl. ¶21; Exhibit N to Vierra Decl.

RESPONSE:

Admit the first sentence. Admit the second sentence to the extent that the correspondence included an unsigned "Amendment of Solicitation/Modification of Contract" dated January 8, 2003. Deny that the letter approved West Bay's claim as this is a legal conclusion not appropriate for a proposed finding of fact. Admit that the quoted language in the third sentence appeared in Mr. Koenig's letter.

23. The January 8, 2003 "Amendment of Solicitation /Modification of Contract" states in Paragraph 14.a : "This supplemental Agreement is to provide full consideration to West Bay

Builders as a result of a government direction on 3 May 2002 and 9 May 2002 to seal approximately 32,000 square feet of concrete sub-flooring to a maximum measured vapor pressure of 3 lbs assuming an existing condition of 15lbs vapor pressure throughout." The January 8, 2003 Amendment further states in 14.c: "The negotiated total price for the sealant effort is $128, 279.20." Vierra Decl. ¶21; Exhibit N to Vierra Decl.

RESPONSE:

Admit only that this quotation accurately reflects the language in the document cited. Deny any legal conclusion as to this document which was unsigned by either West Bay or the VA.

24. On January 15, 2003, Mr Vierra wrote a letter to Mr. Koenig. Mr. Vierra's letter stated that "it is clear that there is no provision for the requested extension of time . . . the current schedule is tracking a total of 23 days for this work." Vierra Decl. ¶22; Exhibit O to Vierra Decl.

RESPONSE:

Admit that this quoted language accurately reflects a portion of the letter cited.

25. On April 4, 2003, Mr Koenig responded to Mr. Vierra's January 15, 2003 letter. In his April 4, 2003 letter, Mr. Koenig rescinded the VA's Amendment of Solicitation/Modification of Contract" and gave West Bay a final offer to settle the claim in the amount of $64,149.00. Mr. Koenig also articulated a different reason for rejecting West Bay's claim, stating that "A further review of your claim by the VA Legal Counsel has resulted in a determination that the Government contract specifications contained a 'patent ambiguity' with regards to the necessity for sealing the floors. Essentially this means if our specifications are ambiguous and do not adequately address standard industry practice then it is incumbent upon the contractor to raise

the issue with the Government prior to submitting a bid."

Vierra Decl. ¶23; Exhibit P to Vierra Decl.

RESPONSE:

Admit to the extent that this proposed fact accurately quotes the letter cited; denies West Bay's characterization of the letter as a rescission.

26. On April 7, 2007 [sic], Mr Vierra issued a letter to Mr Koenig, which stated that West Bay declined the VA's final offer and requested a final decision from Mr. Koenig pertaining to West Bay's claim. Vierra Decl. ¶24; Exhibit Q to Vierra Decl.

RESPONSE:

Admit, except that the date of the letter was April 7, 2003, not April 7, 2007. Ex. Q to Vierra Decl., p. 1.

27. On July 7, 2003, the VA issued its "Final Decision of the Contracting Officer," denying West Bay's claim in its entirety, because the VA's new interpretation of the specification required West Bay to assume 15 pounds of moisture emission level prior to sealant application. Vierra Decl. ¶25; Exhibit R to Vierra Decl.

RESPONSE:

Admit that the contracting officer denied West Bay's claim on July 7, 2003, deny West Bay's characterization of the letter.

28. The sealant work was performed in phases and completed in April 2003.

Vierra Decl. ¶25.

RESPONSE:

Admit.

29. West Bay incurred costs for the extra work performed pursuant to the VA's directive to apply floor sealant. West Bay incurred additional labor and material costs, as a result of the VA's failure to pay West Bay for the extra work performed. West Bay submitted certified claim in the total amount of $128,833.00 to the VA on June 10, 2002, as detailed in West Bay's Change Order Proposal Estimate 3.2 attached hereto as Exhibit "L". To date, the VA has failed to pay West Bay for the extra work. Vierra Decl.¶26; Exhibit "L" to Vierra Decl.

<u>RESPONSE:</u>

Admit that West Bay incurred costs associated with the floor sealant. Admit that West Bay submitted its certified claim in the amount of $128,833.00 to the United States on or around June 10, 2002. Deny that the costs associated with the floor sealant are "extra work," or that West Bay incurred any "additional" costs, as whether West Bay was contractually obligated to perform this work is a legal conclusion which is inappropriate for a proposed finding of fact.

30. As of the date of the filing of this Motion for Summary Judgment, prejudgment interest has accrued and will continue to accrue on the principal sum of $128,833.00 from June 10, 2002 (the date of West Bay's Certified Claim) onward.

<u>RESPONSE:</u>

Denies. Whether West Bay is entitled to any interest, pursuant to the Contracts Disputes Act, or any other statute, is a determination of law and is inappropriate for a proposed finding of fact.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

S/Tara K.Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

OF COUNSEL:

ANNA C. MADDAN
Staff Attorney
Office of General Counsel
Department of Veterans Affairs
Procurement, Construction &
Litigation Division

October 19, 2007

Attorneys for Defendant

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on October 19, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Tara K. Hogan