**NO. 04-01140C**
**(J. SWEENEY)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

WEST BAY BUILDERS, INC.

Plaintiff,

v.

The United States,

Defendant.

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Timothy L. McInerney
McInerney & Dillon PC
1999 Harrison Street
Oakland, CA 94612
(510) 465-7100
(510) 465-8556

Attorneys for Plaintiff

Dated: November 9, 2007

## TABLE OF CONTENTS

I. Summary of Argument ....................1

II. Argument and Authorities ....................2

A. The contract specifications cited in VA's Response were not patently ambiguous ....................2

1. Paragraph 1.02(A) of Section 09800 ....................3

2. Amendment #4 to contract specifications and Paragraph 3.01(E) of Section 09800 ....................4

3. Paragraphs 2.4 and 3.2(E) of Section 09660 ....................6

4 Contract Drawing A060. ....................8

B. The VA's conduct is evidence of the VA's intent that the contract is not patently ambiguous ....................9

C Any alleged ambiguity should be construed against the VA, because West Bay's interpretation of the specifications is within the zone of reasonableness ....................12

D. Undisputed evidence shows that West Bay acted reasonably and in good faith ....................14

E. The tile manufacturer's warranty is a non-issue in this litigation. ....................16

III. Conclusion ....................19

## TABLE OF AUTHORITIES

**CASES**

Bennet v. United States,
371 F.2d 859 (Ct. Cl. 1967) ....................................13

Blount Bros. Const. Co. v. United States,
346 F.2d 962, 973 (Ct. Cl. 1965)....................................14

Floyd v. Ring Construction Corp.,
165 F.2d 125 (8th Cir 1948) ....................................10

Franchi Const. Co. v. United States,
609 F.2d 985 (Ct.Cl. 1979)....................................9

General Warehouse Two, Inc. v United States,
389 F.2d 1016 (Ct. Cl. 1967)....................................11

Gorn Corp. v. United States,
424 F.2d 588 (Cl. Ct. 1970)....................................13

H&M Moving, Inc. v. United States,
499 F.2d 660 (Ct. Cl 1974)....................................13, 16

Kraus v. United States
366 F.2d 975 (Ct.Cl.1966)....................................12

Liles Const. Co. v. United States,
455 F.2d 527 (Ct. Cl. 1971)....................................12

Macke Co. v. United States,
467 F.2d 1323 (Ct. Cl. 1972)....................................11

Sturm v. United States,
421 F.2d 723 (Ct. Cl. 1970)....................................13

United States v. Turner Const. Co.,
827 F.2d 1554 (Fed. Ct. 1987) ....................................13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEST BAY BUILDERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-1140C<br>(Judge M. Sweeney) |
| THE UNITIED STATES, | ) | |
| Defendant, | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff West Bay Builders, Inc. ("West Bay") submits this Response to the United States' Cross-Motion for Summary Judgment and Reply to the United States' Opposition to Plaintiff's Motion for Summary Judgment ("the VA's Response"). In addition to this Response, West Bay relies upon its Response to the United States' Proposed Findings of Uncontroverted Fact, its appendix accompanying this response, and the pleadings in this matter.

## I. SUMMARY OF ARGUMENT

The VA's Response is a series of arguments that are not supported by logic, fact or law. The VA attempts to obfuscate and divert the court's attention from the key undisputed facts which establish West Bay's right to summary judgment. These include the following:

- West Bay performed actual testing of moisture emission levels as required by the contract. See Defendant's Response and Admission to Plaintiff's Proposed Finding of Uncontroverted Facts ("PFUF") ¶4 and ¶6.

- At one point the VA wanted West Bay to utilize old moisture emission test results. See Vierra Decl. ¶11 and Exhibit F to Vierra Decl.: Armando Binsol's May 2, 2002 e-mail.
- The VA stated that "[a] lengthy review of the merit of your claim has resulted in an interpretation of the contract provisions which is favorable to West Bay Builders." See Plaintiff's PFUF ¶22.
- Paragraph 1.02(A) of Section 9800 only required the contractor to apply moisture sealant if the test results were 15 lbs or more. See VA's Cross-motion, p. 5 and 9 and Exhibit F to Vierra Decl.: Armando Binsol's May 2, 2002 e-mail: "The spec section 09800, section 1.02, para. A, confirms the contractor's statement" that "section 09800…is to apply only where the starting calculation is 15.0 lbs or more."
- West Bay's interpretation of Amendment #4 that such amendment does not instruct the contractor to assume a starting calculation is reasonable. See VA's Cross-motion, p. 10.

As demonstrated in both West Bay's Summary Judgment Motion and this response, the undisputed material facts and applicable law support a finding in favor of West Bay.

## II. <u>ARGUMENT AND AUTHORITIES</u>

### A. The contract specifications cited in VA's Response were not patently ambiguous.

The VA cited four sections of the contract to support its theory that a patent ambiguity exists, and therefore West Bay had the alleged duty to request clarification from the VA. See VA's Cross-motion, p.5. However, the VA does not dispute West

Bay's interpretation of the critical sections, but only argues they "could be" confusing. The plain meaning of the four sections cited by the VA was neither patently ambiguous nor contradictory; nor did these four sections negate the testing requirement. West Bay's interpretation of the four pertinent parts of the contract specifications is reasonable. The VA does not dispute West Bay's interpretation but only offers a different one, albeit strained.

During construction, the VA found no patent ambiguity in its reading of the subject sections. Based on its reading the VA issued a modification agreeing to West Bay's interpretation and claim. See Plaintiff's PFUF ¶ 21; Exhibit N to Vierra Decl. The VA never referred to this patent ambiguity argument until after it approved West Bay's claim and its legal counsel became involved in the dispute. See Plaintiff's PFUF ¶ 25; Exhibit P to Vierra Decl. This patent ambiguity argument is summarily defeated by the VA's initial position that there were no obvious inconsistencies in the specifications. The VA's conduct was patently inconsistent and contradictory, not the contract specifications.

**1. Paragraph 1.02(A) of Section 09800**

The VA's Response admits that West Bay's interpretation of Paragraph 1.02(A) of Section 09800 does not require West Bay to apply the moisture sealant unless actual test results showed that emission levels were 15.0 lbs or more. The VA now concedes this point:

> "Paragraph 1.02A required West Bay to use a sealant that would reduce moisture emission levels to under three pounds and to install such sealant where the tested result was 15.0 pounds or more."

See VA's Cross-motion, p. 9.

However, the VA stated that Paragraph 1.03(A) required "installation of a sealant that would reduce moisture vapor emissions to the level required by the tiling manufacturer." See VA's Cross-motion, p. 9. This is an erroneous interpretation of Paragraph 1.03(A). Paragraph 1.03(A), which is immediately preceded by Paragraph 1.02, states, "The treated area shall demonstrate a reduction of moisture vapor emission to the level specified by the manufacturer of the finish flooring materials (emphasized)." The phrase "the treated area" refers to treatment of the floor area, i.e. the application of sealant to the area if treatment is required pursuant to Paragraph 1.02(A). Both West Bay and the VA agree that Paragraph 1.02(A) outlines the specific condition under which floor sealant should be applied, i.e. "where the tested result was 15.0 pounds or more." Paragraph 1.03(A) applies only if the contractor determined that the floor area needs treatment. The VA erroneously concluded that Paragraphs 1.02(A) and 1.03(A) contradict each other, when in fact the two paragraphs are consistent.

**2. Amendment #4 to contract specifications and Paragraph 3.01(E) of Section 09800**

The VA initially maintained that it intended Amendment #4 to modify Paragraph 3.01(E) to require West Bay to assume an existing level of 15 lbs of moisture, which eliminated the testing requirement. The VA's formal notice directing West Bay to apply the sealant, dated May 9, 2002, included the following instructions:

> "[f]or purposes of the sealing application it was the intent of the VA to indicate in the contract (via amendment #4) that the successful bidder on this project was to use 15 lbs of vapor pressure as the existing level for all floor surfaces."

Plaintiff's PFUF ¶ 19; Exhibit K to Vierra Decl. The VA's Final Decision also stated that the VA "ha[s] determined that the contract specifications that the floors be sealed to 3

lbs assuming a 15 lbs moisture accumulation overall (emphasis added)." Plaintiff's PFUF ¶ 27; Exhibit R to Vierra Decl.

Now the VA's Response directly contradicts its formal notice and its final decision by stating that "[t]he phrase 'use 15 lbs' could, but does not clearly, instruct the contractor to assume an existing amount of 15 lbs of moisture." See VA's Cross-motion, p.10. The VA's Response further added that "the Amendment #4 does not provide clear instructions, but adds to the confusion." See VA's Cross-motion, p. 11. Again, the VA does not directly reject West Bay's interpretation but agrees that such language does not clearly instruct the bidder to assume anything.

Amendment #4 did not require the contractor to assume anything, but was a reference to information on the product's performance on past projects as described in Paragraph 1.03(B) of Section 09800. The VA now agrees with West Bay that Paragraph 1.03(B) deals with "the requirement for written proof of the sealant subcontractor's moisture treatment experience, as West Bay correctly points out." See VA's Cross-motion, p.10.

Instead of directly addressing West Bay's plain meaning approach to Amendment #4 and Paragraph 3.01(E), the VA changed its argument. Surprisingly, the VA now attempts to convolute the issue by stating that "[t]he phrase 'use 15 lbs' could, but does not clearly, instruct the contractor to assume an existing amount of 15 lbs of moisture." See VA's Cross-motion, p.10. The VA's present position that Amendment #4 is ambiguous contradicts the position that VA took when directing West Bay to perform the work.

The VA should not be allowed to rely on its own strained interpretation of Amendment #4 when it formally directed the contractor to perform work, and then later abandoned its interpretation when it was more convenient to argue that it did not really understand its own contract. Neither West Bay nor any other reasonable contractor should be forced to take the VA's formal notice to proceed at its face value, and later be

forced to defend its claim because the VA's attorney now decided to argue that the VA's contract was confusing and ambiguous. The language of the specifications never changed, only the VA's spin.

**3. Paragraphs 2.4 and 3.2(E) of Section 09660.**

The VA cited Paragraphs 2.4 and 3.2(E) of Section 09660 as evidence that a patent ambiguity exists in contract specifications. However, the plain meaning of paragraphs 2.4 and 3.2(E) is consistent with West Bay's position that the contractor was not required to apply moisture sealant unless the testing showed that existing moisture level is 15 lbs or more.

Paragraphs 2.4 and 3.2(E) of Section 09660 read:

> 2.4 Sealer & Primer (For Concrete Subfloors)
>
> As recommended by the adhesive and tile manufacturer. Seal for moisture content of 15 Ibs. Contractor to provide testing to verify moisture level. See Specification 09880 and Part 3.2, Subfloor Preparation.[1]
>
> 3.2 E. Concrete Floor Testing:
>
> Determine Adhesion and dryness of the floor by bond and moisture tests as recommended by RFCI manual MRP.

Paragraph 2.4 asks the contractor to "seal moisture contents of 15 lbs" and "to provide testing to verify moisture level." This paragraph is consistent with West Bay's interpretation of other portions of the contract specifications, and particularly Section 09800, that the contractor was required to performed actual testing to determine moisture emission levels and to seal if moisture contents are 15 lbs. Paragraph 3.2(E) also references moisture tests to be performed by the contractor. Both paragraphs 2.4

[1] West Bay agrees with the VA that the reference to Specification 09880 appears to be a typographical error.

and 3.2(E) support West Bay's contention that the contract specifications required the contractor to actually perform moisture emission tests, and that the contractor is not to assume existing emission level to be 15 lbs. The fact that testing requirement exists in both Section 09660 and Section 09800 indicates that the testing of actual moisture emission level is a critical component of the contract.

It is undisputed that at one time during construction, the VA directed West Bay to use previously undisclosed test results. (See Defendant's Response and Admission to Plaintiff's PFUF ¶ 9; see also Vierra Decl. ¶11 and Exhibit F to Vierra Decl.: Armando Binsol's May 2, 2002 e-mail: "The moisture test for the work required cannot be based on 'current test result' conducted by the contractor on 4/22/02…The contractor's bid on the requirement of specification 09800 must have been based on a level of mediation prior to bid submission.") Contradicting its "assume 15 lbs" argument, the VA wanted West Bay to use actual test data. The VA now ignores their previous conduct. The VA's Response also failed to address the testing requirement under Section 09660 at all, when Paragraph 2.4 clearly requires the contractor "to provide testing to verify moisture level."

The VA relied on its assertion that under ¶2.4 the contractor is to apply sealant regardless of testing based entirely on the statement "[a]s recommended by the adhesive and tile manufacturer." See VA's Cross-motion, p.10. This statement by itself does not negate the testing requirement, especially when this statement directly precedes the statement that the contractor is "to provide testing to verify moisture level." Furthermore, Paragraph 2.4, when taken as a whole, means that the contractor is to perform testing to determine moisture emission levels and to seal if testing shows moisture contents are 15 lbs, and the sealant application, if necessary, should be performed "as recommended by the adhesive and tile manufacturer." This reasonable interpretation is consistent with West Bay's interpretation of Section 09800.

In addition, the VA's Response again resorts to the contradictory and unintelligible position that "it is vague whether the final moisture content, after sealant application, should be 15lbs (emphasis added)." See VA's Cross-motion, p.10. This is a strained interpretation of Section 09660, and was never a position advanced by the VA in its previous dealing with West Bay, when it asked West Bay to assume 15 lbs prior to sealant application. When Section 09660 is read together with Section 09800 as a whole, it is undisptued that testing is required and the purpose of the testing is to determine if moisture sealant should be applied.

**4. Contract Drawing A060**

The VA references Contract Drawing A060 as further evidence that patent ambiguity exists in the contract specifications. However, Contract Drawing A060 does not contradict Section 09800; Contract Drawing A060 in fact requires the contractor review Section 09800. Contract Drawing A060 reads:

> Provide moisture barrier at all new work areas at 1st floor concrete slab prior to installation of new finish. See Specification 07260 (Amended to 9800).

First, contrary to the VA's assertion that this section "clearly require installation of moisture barrier sealant….regardless of any initial moisture test results," Contract Drawing A060 applies only to "new work areas at 1st floor." See VA's Cross-motion, p.10. Only a small portion of the existing floors were to be patched with new concrete.

Section 09800 governs the application of floor concrete moisture sealant for the entire Project. The fact that one part of the contract specifications requires the contractor to apply moisture sealant on a small subset of the Project, while the other part of the contract specifications requires the contractor to test and measure emission levels prior to the application of sealant is neither contradictory nor patently ambiguous.

West Bay's conduct is consistent; when it submitted its bid on the Project to the VA, the bid had a total value of $2,000.00 for the sealing work. The $2,000.00 value for the sealant work "was based on the fact that any new concrete patches would require

this moisture control sealant," as stated in Paul Thompson's May 2, 2002 letter to the VA. PFUF ¶ 15; Exhibit "I" to Vierra Decl.; see also Defendant's Response and Admission to PFUF ¶ 15.

Second, Contract Drawing 060 specifically requires the contractor to refer to Section 09800 for instructions on the application of floor sealant. It is reasonable for West Bay to interpret Drawing 060 to mean that the two sections complement one another, instead of what the VA alleges to be ambiguous and contradictory.

Finally, even if any alleged conflict exists between Contract Drawing 060 and Section 09800, which West Bay denies, West Bay has no duty to inquire about the alleged conflict, because the Court of Claims held that a contractor would have no duty to inquire about a conflict between the drawings and the specifications because the conflict could be resolved through the use of the "order of precedence clause." Franchi Const. Co. v. United States, 609 F.2d 985 (Ct. Cl. 1979), 21 G.C. ¶518. The contract specifications contain an order of precedence clause, which states, "In case of difference between drawings and specifications, the specifications shall govern." See Plaintiff's Appendix to Response, Paragraph 4.90(a) of Section 01001 of Contract Excerpt. The order of precedence clause states that contract specifications governs in case of any alleged conflict between drawings and specifications.

**B. The VA's conduct is evidence of the VA's intent that the contract is not patently ambiguous.**

In sharp contrast to West Bay's reasonable and consistent interpretation of contract specifications, it is undisputed that the VA held inconsistent and contradictory interpretations of the contract specifications, rendering its reading of the contract unreasonable. First, the VA's position was that the contract requires the contractor to skip all testing and to apply floor sealant to the entire area of the Project pursuant to Amendment #4. Then, after a "lengthy review of the merit" of West Bay's claim, the VA

found no patent ambiguity and approved West Bay's claim that the application of the floor sealant is outside the scope of the contract. Defendant's Response and partial Admission to PFUF ¶22. Months later, the VA changed its position again, stating that patent ambiguity exists in the contract. Defendant's Response and partial Admission to PFUF ¶25; Exhibit P to Vierra Decl. Finally, the VA's Final Decision of the Contracting Officer resorted to the alleged contract requirement that the floor "be sealed to 3 lbs assuming a 15 lb moisture accumulation overall." Defendant's Response and partial Admission to PFUF ¶27; Exhibit R to Vierra Decl. Now the VA's position is that Amendment #4 "does not provide clear instructions", and is confusing. See VA's Cross-motion, p.11.

Where ambiguity exists in a contract, the construction placed on it by the parties in their dealings and by their conduct will furnish a court with persuasive evidence of their meaning. Floyd v. Ring Construction Corp., 165 F.2d 125 (8th Cir 1948). The VA attempts to evade the facts that it held contradictory and inconsistent positions by arguing that "West Bay has identified no demonstrated mutual intent" and that VA's formal modification agreeing with West Bay's interpretation "hardly qualifies as a course of conduct demonstrating parties' intent…" The error with this line of argument is that, when West Bay and VA were communicating and discussing the merit of West Bay's claim, both West Bay and VA were complying with the contractual requirement for submission of a claim for extra work, which qualifies as a course of conduct during contract performance. The VA's Response even admits that, "following a contracting officer's final decision, the parties start in court or before the board with a clean slate." See VA's Cross-motion, p.20. The VA's admission suggests that the advent of

controversy is when the contracting officer's final decision was issued (and when the contracting officer formally reversed its previous agreement with West Bay to compensate West Bay).

Case law supports the view that VA's conduct prior to the contracting officer's final decision should be considered by this Court as evidence of the VA's intent. In Macke Co. v. United States, 467 F.2d 1323, 1325 (Ct. Cl. 1972), the Court of Claims states:

> …the greatest help comes, not from the bare text of the original contract, but from external indications of the parties' joint understanding, contemporaneously and later, of what the contract imported. The case is an excellent specimen of the truism that how the parties act under the arrangement, before the advent of controversy, is often more revealing than the dry language of the written agreement by itself. We are, of course, entirely justified in relying on this material to discover the parties' underlying intention.

The Court of Claims in Macke Co*.* held that statements made by the government after the contractor gave notice of its' intent to make additional claim and submitted the request for relief, but before the advent of controversy, should be taken into account by the Court in discerning the parties' intention. Id. at 1325-27. In General Warehouse Two, Inc. v United States, 389 F.2d 1016 (Ct. Cl. 1967), the Court of Claims similarly ruled that the government's issue of amendment to the lease agreement to compensate contractor under the contract for additional rental space prior to the commencement of the lawsuit lends support for the interpretation that the government had intended to compensate the contractor for extra work. Id. at 1019-1020.

The VA issued a formal "Amendment of Solicitation/Modification of Contract" dated January 8, 2003 that approved West Bay's entire claim for $128,279.20 for the floor sealant, finding that West Bay's claim was meritorious. The VA's Response provided no competent authority as to why this Court cannot consider the January 8, 2003 amendment as evidence of the VA's intent.

Now the VA is claiming that Amendment #4 "does not provide clear instructions." If the language of the contract is patently ambiguous, it should not have taken the VA 11 months after West Bay submitted its claim in May of 2002 to realize that the alleged patent ambiguity exists. If different portions of the contract patently contradict each other, the VA's contracting officer would have spotted it immediately; that is the definition of "patent" –obvious .

The court will adopt the interpretation given at the time the contractor discusses the contract language with the government during the performance of the contract. Kraus v. United States, 366 F.2d 975, 981 (Ct.Cl.1966); see also Liles Const. Co. v. United States, 455 F.2d 527, 538-39 (Ct. Cl. 1971) ("Concurrence of government inspector and architect-engineer, upon inspection of situation, that subcontractor should be paid on time and material basis for certain allegedly additional work was, while not conclusive, persuasive that work was outside contract according to contemporaneous interpretation"). The VA formally authorized West Bay to proceed with floor sealing of the entire Project based on old test results. See Defendant's Response and Admission to Plaintiff's PFUF ¶ 9; and Exhibit F to Vierra Decl. This position corresponds with the testing requirement of the contract, which West Bay consistently pointed to the V.A. as evidence that application of the sealant is outside the scope of section 09800. Therefore, this Court should not adopt the VA's patent ambiguity interpretation when its previous interpretation of the contract during parties' performance clearly contradicts the patent ambiguity argument.

**C. Any alleged ambiguity should be construed against the VA, because West Bay's interpretation of the specifications is within the zone of reasonableness.**

The contract language should be construed against the drafter if the other party's interpretation is reasonable. This principle is applied in government contract disputes, because these contracts contain a massive amount of verbiage, leaving much room for ambiguities and great difficulty in finding such ambiguities during the preparation of

bids. Sturm v. United States, 421 F.2d 723. 726 (Ct. Cl. 1970) ("This oft-repeated and much-applied rule serves important purposes. It puts the risk of ambiguity, lack of clarity, and absence of proper warning on the drafting party which could have forestalled the controversy; it pushes the drafters toward improving contractual forms; and it saves contractors from hidden traps not of their own making."); see also Gorn Corp. v. United States, 424 F.2d 588 (Cl. Ct. 1970).

West Bay demonstrated that it interpreted these contract provisions in a consistent and reasonable manner. If it can be shown that the language is reasonably susceptible of the interpretation given it by the non-drafter, the result will be in favor of the non-drafter even if the drafter has a competing interpretation of the contract. H&M Moving, Inc. v. United States, 499 F.2d 660, 671 (Ct. Cl 1974); United States v. Turner Const. Co., 827 F.2d 1554 (Fed. Ct. 1987).

In the present case, West Bay maintained that the contract specifications do not require the contractor to apply floor sealant to all areas of the Project unless the test showed moisture level is 15 lbs or more, which is a reasonable position as recognized by the VA in its Response. See Defendant's Response and Admission to Plaintiff's PFUF ¶ 3; see also VA's Cross-motion, p. 5 and 9. The fact that the VA maintains a different interpretation does not refute that West Bay's interpretation is reasonable and should be accepted.

Nor does the non-drafter of the language have to prove that its interpretation is the only reasonable one. The Court of Claims stated in Bennet v. United States, 371 F.2d 859 (Ct. Cl. 1967):

> To prevail…it is not essential that [the contractor] demonstrate his position to be the only justifiable or reasonable one. A specification susceptible to more than one interpretation found to be consistent with the contract's language and the parties' objectively ascertainable intentions, becomes convincing proof of an ambiguity; the burden of that ambiguity falls solely upon the party who drew the specification.

Id. at 861. Even in the unlikely event that this Court finds that the United States' interpretation of the contract specifications is more reasonable than West Bay's interpretation, the *contra proferentum* rule still applies, because West Bay's interpretation is a reasonable one.

Furthermore, when the alleged ambiguities are not blatant, the court will not construe the language against the non-drafter. "[The contractors] are not expected to exercise clairvoyance in spotting hidden ambiguities in bid documents, and they are protected if they innocently construe in their own favor an ambiguity equally susceptible to another construction." Blount Bros. Const. Co. v. United States, 346 F.2d 962, 973 (Ct. Cl. 1965). The undisputed evidence shows that West Bay construed the contract specifications, specifically Section 09800, in a reasonable manner, as admitted by the VA. West Bay should not be forced to adopt the VA's various inconsistent interpretations of the contract (many of which were not disclosed to West Bay until the litigation has begun in this matter), even if this court somehow rules that the VA's position is more reasonable.

**D. Undisputed evidence shows that West Bay acted reasonably and in good faith.**

The VA offers the unfounded and unsupported assertion that West Bay "took a calculated risk to underbid the other bidders by assuming it would apply a minimal amount of floor sealant…" and "without any understanding of the actual assumptions of

the contract." VA's Cross-motion, p.15. The VA even accused West Bay for failing to "even avail itself of the pre-bid site walk-through so that it could look at the condition of the floor" without citing to any evidence to support this ridiculous accusation. VA's Cross-motion, p.15.[2] The VA argues that West Bay should bear the risk of West Bay's allegedly deliberate and unreasonable interpretation of contract without any competent evidence or legal authority

West Bay allocated $2,000.00 for the application of floor sealant to the new patches of concrete only, which is consistent with West Bay's interpretation of the contract. PFUF ¶ 15 and 16. When the contract explicitly states that the work is outside the scope of contract, the contractor is certainly not expected to allocate value and time for the extra work.

The VA characterized West Bay's approach as taking on a "calculated risk" "in that it could be required to apply sealant to the entire floor and would not have been entitled to seek any additional compensation if its interpretation of the contract specifications was wrong. The VA's argument and characterization of West Bay is false and irrelevant. Clayton Fraser, West Bay's estimator who prepared the bid for the Project, testified in his deposition that he and West Bay prepared the bid concerning the application of floor sealant based on his past experience and his knowledge of the Project:

> I've done this for 12 years now, and I know what—what we've done in the past. I know what's worked. I know where the moisture levels are high, where they're low.

DA18. The moisture test results from 1999, which was not provided to West Bay by the VA, certainly conformed with Mr. Fraser and West Bay's reasonable assessment that the floor sealant need not be applied. Exhibit D to Vierra Decl. There is nothing unreasonable about West Bay and Mr. Fraser's conduct, as they made the bid based on

[2] The VA's arguments that "the floors were evidently tested in 1999 due to existing moisture emission damage" and "West Bay was unable to explain its basis for the $2,000 it allocated for sealant" were also not supported by any evidence whatsoever. See VA's cross-motion, p. 15.

reasonable interpretation of the contract, their previous construction experience and the present knowledge of the Project, something contractors do everyday.

West Bay was fully ready to perform the extra work at no extra cost to the VA if the test results show existing emission levels to be 15 lbs or more. This was the risk that West Bay was ready to bear based on its experience and reasonable assessment of the Project. The type of calculated risk that the VA accused West Bay of is the unfounded allegation that West Bay deliberately acted in bad faith and was counting that its interpretation of the contract would prevail. The VA offered no evidence whatsoever that West Bay acted in bad faith in interpreting the contract or had not even done the pre-bid site walk through; in fact, the evidence proffered by the VA supports West Bay's position that its conducts and interpretation of the contract was reasonable.

When a contractor "was not deliberately seeking to profit from a recognized error by the Government [in drafting ambiguous contract]" and "innocently construe in their own favor an ambiguity," the contractor is "protected" and the court will recognize the contractor's interpretation of the contract is reasonable. Bount Bros. Const. Co. 346 F.2d 962, 973. A contractor has no duty to inquire the VA of ambiguity as long as the contractor acts in good faith. H&M Moving, Inc. v. United States, 499 F.2d 660. Therefore, this Court should recognize that West Bay acted in good faith in its performance and interpretation of the contract.

**E. The tile manufacturer's warranty is a non-issue in this litigation.**

The VA argues that even if the contract does not contain a patent ambiguity, this Court should still grant summary judgment in the VA's favor because West Bay's interpretation of the contract would have rendered the vinyl composition tile ("VCT") allegedly unwarrantable. The VA is essentially alleging that West Bay failed to warrant the VCT in the Project by adopting its

interpretation of the contract. However, the warranty of the VCT is a non-issue in this litigation. The VA did not sue West Bay for breach of warranty, and West Bay is standing behind its warranty on the VCT. The VA's argument here is irrelevant because the present case deals with interpretation of contract, not breach of warranty.

First, the VA's assertion that West Bay's interpretation would have rendered the VCT unwarrantable is simply false. The VA cited to the VCT manufacturer's "Installation Tips" as evidence of VCT manufacturer's "warranty requirement." Defendant's Appendix, p.40. The plain language the section cited by the VA simply does not require the Armstrong Brand's "Installation Tips" to be incorporated to its warranty requirement. The VA's interpretation of the VCT manufacturer's "Installation Tips" is as unreasonable as its interpretation of its contract.

The VA's assertion that "flooring manufacturers generally will not guarantee their flooring products unless the moisture levels of the subflooring are below 3 lbs" is also false and misleading to the Court. The VA based this assertion on West Bay's alleged admission to the VA's Request for Admission No. 13, which states "[a]dmit that <u>the</u> flooring manufacturer would not guarantee its product if it was installed over a substrate which has more than 3.0 lbs moisture emission (Emphasis added)." Defendant's Request for Admission No. 13 did not ask West Bay to admit that <u>all</u> flooring manufacturer<u>**s**</u> "<u>generally</u> will not guarantee its product" if it was installed over a substrate which has more than 3.0 lbs moisture emissions. In other words, the VA's assertion that all "flooring

manufacturers generally will not guarantee their flooring products unless the moisture levels of the subflooring are below 3 lbs" is false.[3]

Second, the tile manufacturer's warranty requirement is not part of the contract. All that is required of West Bay is to comply with the terms and the warranty provisions of the Project's contract specifications. It is unreasonable for West Bay to rely on the Armstrong brand's "Installation Tips" as warranty requirement when the plain meaning of the contract specifications is unambiguous and clearly spells out how West Bay is to proceed. When a contractor interprets the terms of the contract specifications, it is not required to rely on the tile manufacturer's installation requirement or "Installation Tips" to determine how the contractor is to proceed on the contract.

It is undisputed that West Bay warrants the VCT to the VA. It is undisputed that Western Flooring Corp, not Armstrong, was West Bay's subcontractor for the installation of the floor tiles. Western Flooring Corp.'s warranty certificate states that the installation

> "has been done in accordance with the Drawings and Specifications and that the work as installed will fulfill the requirements of the warranty included in the specifications and will be free of defects in materials and workmanship for a period of one (1) years from the date of Substantial Completion."

DA35. The fact that West Bay and Western Flooring Corp. fully warrant the VCT pursuant the Drawings and Specifications makes the VA's argument regarding the tiling manufacturer's installation tips and warranty requirement irrelevant. West Bay and Western Flooring Corp. fully warrant the work pursuant to the

---

[3] West Bay will file a motion to withdraw admission to the government's request for admissions No. 13 and No. 10 to clarify that the two statements contained in the government's request for admissions No. 13 and No. 10 are part true and part false.

contract specifications, not Armstrong. The VA has presented no evidence whatsoever that West Bay's interpretation of the contract would have violated the warranty provision included in the Project's specifications.

## CONCLUSION

For the reasons stated above, West Bay respectfully requests this Court to deny the VA's Cross-motion for summary judgment and grant West Bay's motion for summary judgment.

Respectfully submitted,

/s/ Timothy L. McInerney

Timothy L. McInerney
McInerney & Dillon PC
1999 Harrison Street
Oakland, CA 94612
(510) 465-7100
(510) 465-8556
Attorneys for Plaintiff

Dated: November 9, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2007, I electronically filed the foregoing Plaintiff's Motion for Summary Judgment with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Tara Kathleen Hogan**
U. S. Department of Justice
Civil Division- Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530
(202) 307-1011
(202) 514-8624 (fax)
tara.hogan@usdoj.gov

/s/ Timothy L. McInerney
Timothy L. McInerney