# In the United States Court of Federal Claims

No. 04-1140 C
(Filed: March 14, 2008)

| | | |
|---|---|---|
| WEST BAY BUILDERS, INC., Plaintiff, | * | Requests for Admission; RCFC 36; Deemed Admissions; Motion to Withdraw; Excusable Neglect; Inadvertence; Prejudice. |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

Timothy L. McInerney, Oakland, CA, for plaintiff.

Tara Kathleen Hogan, United States Department of Justice, Washington, DC, for defendant.

## RULING ON PLAINTIFF'S MOTION TO WITHDRAW ADMISSIONS

Before the court are Plaintiff's Motion to Withdraw Admissions ("motion"), Plaintiff's Declaration of Timothy L. McInerney in Support of West Bay's Motion to Withdraw Admissions and accompanying exhibits, Defendant's Response to Plaintiff's Motion to Withdraw Admissions, and Plaintiff's Reply in Support of Motion to Withdraw Admissions. Plaintiff also filed a Request for Judicial Notice in Support of Plaintiff's Motion to Withdraw Admissions, wherein it asks that the court take judicial notice of several pleadings and the dates on which they were filed. In its motion, plaintiff seeks an order, pursuant to Rule 36(b) of the Rules of the United States Court of Federal Claims ("RCFC"), permitting it to withdraw admissions to defendant's requests for admission numbered 10 and 13, which were originally propounded on May 3, 2007. Plaintiff states that, due to an "inadvertence" by its counsel, it never received defendant's requests for admission and, as a result, never responded to them. Pl.'s Mot. Withdraw Admiss. ("Pl.'s Mot.") 4. Consequently, the matters set forth in defendant's requests for admission were automatically admitted. Id.; see also RCFC 36(a) (deeming a matter admitted unless the responding party provides a written answer within thirty days or within a time agreeable to the parties or to the court). The court deems oral argument on plaintiff's motion unnecessary. For the reasons set forth below, plaintiff failed to satisfy the two-part test set forth in RCFC 36(b) to support withdrawal of deemed admissions; consequently, its motion is denied.

## I. BACKGROUND

This action arises out of a fixed-price contact awarded to plaintiff, a general contractor, by the Department of Veterans Affairs, Palo Alto [California] Health Care System, Martinez Division, for various renovations to Building 90, Livermore Division. Compl. ¶ 4; Pl.'s Mot. Summ. J. 1-2; Pl.'s Mot. 3. These renovations included general construction, demolition, alterations, mechanical and electrical work, installation of utility systems, removal of asbestos, and other work. Compl. ¶ 5; Pl.'s Mot. Summ. J. 2. At issue in this case are the specifications related to floor sealant, Def.'s Cross-Mot. Summ. J. Resp. Pl.'s Mot. Summ. J. 1-2, and whether plaintiff is entitled to recover monies incurred for the application of concrete moisture sealant, id. at 4; Pl.'s Mot. Summ. J. 1; Pl.'s Mot. 3.

On June 14, 2007, the parties informed the court that discovery was complete and expressed the belief that this case could be resolved by motions for summary judgment because "the dispositive issue in this dispute is contract interpretation." Pl.'s Mot. 3. Briefing on the parties' cross-motions was completed on December 3, 2007. On January 16, 2008, plaintiff filed the instant motion seeking to withdraw admissions because defendant's "cross-motion and [its] proposed findings of uncontroverted fact rely on the deemed admissions to the Defendant's Requests for Admissions No. 10 and No. 13." Id. at 4.

Defendant had propounded requests for admission on May 3, 2007. Id. at 3; Pl.'s Decl. Timothy L. McInerney Supp. West Bay's Mot. Withdraw Admiss. ("McInerney Decl.") ¶ 2; id. at Ex. B. According to plaintiff, "inadvertences" resulted in its counsel's failure to (1) forward these requests for admission to plaintiff, and (2) calendar a response date to the requests for admission. McInerney Decl. ¶ 4; see also Pl.'s Mot. 4 (indicating that plaintiff never responded to defendant's requests for admission because plaintiff's counsel never forwarded them to plaintiff). Plaintiff submits that the matters contained in the requests, which were deemed admitted because plaintiff failed to respond within thirty days after service of the requests, see RCFC 36(a), are "part true and part false," Pl.'s Mot. 4; see also Pl.'s Reply Supp. Mot. Withdraw Admiss. ("Pl.'s Reply") 1, 4 (indicating that both requests are not factually accurate). It represents that "[i]t was not until October 23, 2007 that West Bay and its attorneys discover[ed] that West Bay had failed to timely respond to the Defendant's Requests." Pl.'s Mot. 4; see also McInerney Decl. ¶¶ 5-6 (indicating that defendant filed its cross-motion for summary judgment and proposed findings of uncontroverted fact on October 23, 2007, that both filings "rely on the deemed admissions," and that counsel was unaware until October 23, 2007, that plaintiff had failed to provide a timely response).

### A. Request for Admission Number 10

Defendant's request for admission number 10 states:

> Admit that the contract required West Bay to reduce moisture emission levels to within 3.0 lbs.

McInerney Decl. Ex. B. Plaintiff argues that "the alleged fact in the Defendant's Requests for Admission No. 10 is a legal conclusion or ultimate fact in this litigation." Pl.'s Mot. 5. Moreover, plaintiff states that "West Bay would have not admitted to the ultimate fact stated in Request No. 10 if not for the inadvertence of its attorneys, because doing so would make West Bay's entire claim against the Defendant moot." Id. at 5. Plaintiff emphasizes that it adopts a position that the contract required it to reduce moisture emission levels to within 3.0 lbs "only if the testing of the moisture emission levels is 15 lbs or more." Id. at 6; Pl.'s Reply 1. Furthermore, plaintiff argues that request for admission number 10 "is so vague and ambiguous" that it is subject to more than one interpretation, and that "withdrawal of West Bay's automatic admission to Request No. 10 will help clarify and aid in the presentation of the merit of the case . . . ." Pl.'s Reply 2.

### B. Request for Admission Number 13

Defendant's request for admission number 13 states:

> Admit that the flooring manufacturer would not guarantee its product if it was installed over a substrate which has more than 3.0 lbs moisture emission.

McInerney Decl. Ex. B. Plaintiff argues that "the alleged fact contained in Request No. 13 directly contradicts the documents cited by the Defendant in its cross-motion for summary judgment," Pl.'s Mot. 6, and avers that "West Bay's automatic admission to this false statement harms the Court's determination of the merit of the case," id. at 7. Plaintiff states that defendant argues, by virtue of the automatic admission of request for admission number 13, that plaintiff failed to follow the flooring manufacturer's warranty and installation requirements. Id. Plaintiff claims that it has demonstrated that no such warranty requirement exists under the manufacturer's warranty, thereby rendering request for admission number 13 "factually wrong." Id.; Pl.'s Reply 3. Additionally, plaintiff states that "the flooring manufacturer's warranty is a non-issue in this litigation." Pl.'s Mot. 7.

## II. LEGAL STANDARD

### A. RCFC 36

RCFC 36, like its counterpart Rule 36 of the Federal Rules of Civil Procedure ("FRCP"), governs requests for admission.[1] Pursuant to subsection (a) of the rule, a party

---

[1] Interpretation of RCFC 36 "will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." RCFC rules committee note (2002); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of an identical federal rule "informs the Court's analysis" of the corresponding RCFC). The court notes that the Federal Rules were amended on December 1, 2007, "as part of the general restyling of the Civil Rules . . . ." Fed. R. Civ. P. 36 advisory committee's note (2007

> may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of RCFC 26(b)(1) set forth in the request that relate to statements of opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request . . . .
>
> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to RCFC 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

RCFC 36(a) (emphasis added). Subsection (b) of the rule provides a two-part test for a court to apply in determining whether to grant a motion to withdraw or amend admissions:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of RCFC 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

RCFC 36(b).

Rule 36 "allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." In re Carney, 258 F.3d 415, 419 (5th Cir. 2001). Requests for admission are "intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2252 (2d ed. 1994). Thus, RCFC 36, like its counterpart under the FRCP, "serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly to narrow the issues by eliminating those that can be." FRCP 36 advisory committee's note (1970 amendment). "For Rule 36 to be effective in this regard, litigants must be able to rely on the fact that matters admitted will not later be subject to challenge." Carney, 258 F.3d at 419. Admissions can serve as the factual predicate for summary judgment, United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987), and a request for admission is "not objectionable even if [it] require[s] opinions or conclusions of law, as long as

---

Amendment). Any changes to FRCP 36 were "intended to be stylistic only," id., and the court therefore relies upon authorities construing the previous version of FRCP 36.

the legal conclusions relate to the facts of the case. Requests to admit pure conclusions of law unrelated to facts in the case are objectionable," Ransom v. United States, 8 Cl. Ct. 646, 648 (1985) (interpreting Rule 36(a) of the Rules of the United States Court of Claims, which was identical to FRCP 36(a)).

The court has discretion to permit withdrawal or amendment, Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1322 (11th Cir. 2004), and "should apply a 'two-part test' in deciding whether to grant or deny a motion to withdraw or amend admissions." Perez v. Miami-Dade County, 297 F.3d 1255, 1264 (11th Cir. 2002) (quoting Smith v. First Nat'l Bank, 837 F.2d 1575, 1577 (11th Cir. 1988)); cf. Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1119 (5th Cir. 1991) ("[W]hile the district court has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercised within the bounds of this two-part test . . . ."). First, the court considers "whether the withdrawal will subserve the presentation of the merits." Perez, 297 F.3d at 1264. This inquiry "'emphasizes the importance of having the action resolved on the merits,' and is 'satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'" Id. at 1266 (citations omitted). Because a request for admission can "relate to statements or opinions of fact or of the application of law to fact," RCFC 36(a), such a request "is not improper merely because it relates to an 'ultimate fact' or to an issue of fact that is dispositive of one aspect of the case." Branch Banking & Trust Co. v. Beutz-Allis Corp., 120 F.R.D. 655, 658 (E.D.N.C. 1988) (citing City of Rome, Ga. v. United States, 450 F. Supp. 378, 383 (D.D.C. 1978), aff'd, 472 F. Supp. 221 (D.D.C. 1979), aff'd, 466 U.S. 156 (1980)).

Second, the court determines "whether the withdrawal will prejudice the party who obtained the admissions in the presentation of the case." Id. "Mere inconvenience does not constitute prejudice for this purpose." Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005). Indeed, "[t]he prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995) (quoting Brook Village N. Assocs. Gen. Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982)). Courts have also stated that, "[e]ven when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." Carney, 258 F.3d at 419; see also Conlon v. United States, 474 F.3d 616, 624 (9th Cir. 2007) (holding that FRCP 36(b) does not require the district court to grant relief where the moving party has satisfied the two-part test).

Courts have also considered other factors in determining whether the two-part test described above has been satisfied. For example, in Gutting v. Falstaff Brewing Corp., the United States Court of Appeals for the Eighth Circuit stated that a litigant could not be expected to answer a request for admissions during the pendency of a motion to disqualify her counsel. 710 F.2d 1309, 1314-15 (8th Cir. 1983). Reversing the district court's decision denying plaintiff

an opportunity to file answers to the propounded request for admissions, the circuit court concluded that "[a]n attorney's conflict of interest and his or her resulting inability to act must be distinguished from the situation in which the attorney's failure to act was inexcusable. . . . [I]t would be inequitable to deem the requests admitted and penalize her because of her attorney's compliance with the rules of professional responsibility." Id. (citations omitted). Courts have also considered "evasive and dilatory" conduct, see, e.g., Dukes v. S.C. Ins. Co., 590 F. Supp. 1166, 1168 (S.D. Miss. 1984) (recounting plaintiffs' consistent delays and failure to make timely responses to discovery requests and noting that, in their motion, plaintiffs "never attempt to argue or show why they failed to respond timely to Defendant's Requests for Admissions"), aff'd, 770 F.2d 545 (5th Cir. 1985), and carelessness as part of their inquiry. As one court noted,

> "[p]rejudice aside, withdrawal of an admission should not be permitted unless the party seeking relief was careful in making the admission and diligent in asking for its withdrawal. No reasonable allocation of the burden of proving prejudice can eliminate completely the danger that withdrawal will harm a party who has relied on an admission. The argument for tolerating this danger is that we should–as a matter of fairness and justice–protect the interest of the litigants seeking relief from the admission. If this litigant has acted carelessly, however, it would be neither fair nor just to protect him at the risk of harming his opponent. Moreover, since the danger of prejudice cannot be entirely avoided, the possibility of withdrawal necessarily impairs reliance on admissions to some extent. The impairment would be greater, and the reliance less, if no showing of diligence was required.
>
> The litigant seeking relief will be familiar with the facts relevant to diligence and therefore should have the burden of proving it. He should explain why the facts that now cast doubt on his admission were unknown to him when he made the admission."

Branch Banking & Trust Co., 120 F.R.D. at 659-60 (quoting Ted Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371, 424-25 (1962)). Courts may also consider "whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." Conlon, 474 F.3d at 625.

**B. Plaintiff's Interpretation of the Application of RCFC 36**

Plaintiff maintains that automatic admission of the requests "will only harm the Court's determination of the merit of the case." Pl.'s Mot. 6. It emphasizes that "withdrawing West Bay's automatic admissions will help present the merit of the case and avoid the undesirable outcome of this Court relying on ultimate fact and false statements to determine the merit of the case . . . ." Id. at 8; see also id. at 10 (noting that, with respect to request for admission number 10, "automatic admission . . . practically eliminates any presentation of the merit of the case"). Additionally, plaintiff argues that defendant suffers "no substantial prejudice" if the court permits

plaintiff to withdraw its deemed admissions. Id. at 8. Specifically, plaintiff emphasizes that "'preparing a summary judgment motion in reliance upon [an] erroneous admission does not constitute prejudice.'" Id. at 9 (quoting Raiser, 409 F.3d at 1246). However, plaintiff qualifies its argument, contending that prejudice "exists only to the extent that this Court relies heavily on these automatic admissions in determining the merit of the motions for summary judgment." Id. (emphasis added). Thus, according to plaintiff, no prejudice will result if the court does not "rely on West Bay's automatic admissions to ultimate fact, legal conclusion, or false statement." Id.

### C. Defendant's Interpretation of the Application of RCFC 36

Contrary to plaintiff's view, defendant argues that, with respect to the first factor of the RCFC 36(b) test to withdraw or amend an admission, plaintiff has failed to demonstrate that the presentation of the merits would be served by permitting it to withdraw its admissions to the requests. Def.'s Resp. Pl.'s Mot. Withdraw Admiss. ("Def.'s Resp.") 3. It emphasizes that the court should examine whether the admissions to the requests are contrary to the record. Id. (citing Republic Sav. Bank v. United States, 57 Fed. Cl. 73, 75 (2003)). Thus, with respect to request for admission number 13 and plaintiff's contention that it contains factually incorrect information, defendant states that a five pound recommendation "is consistent" with testimony upon which defendant relies. Id. Defendant maintains that "West Bay has not demonstrated that the presentation of the merits would be served by allowing it to withdraw" either admission. Id.

With respect to the second factor of the RCFC 36(b) test, prejudice, defendant argues that it would be prejudiced by plaintiff's withdrawal of its automatic admissions to the requests. Id. at 4-5. It distinguishes Raiser, upon which plaintiff relies for the proposition that preparing a summary judgment motion does not constitute prejudice, see Pl.'s Mot. 9; see also Raiser, 409 F.3d at 1247 ("[A]ny prejudice to [defendant] in preparing a motion for summary judgment is insufficient to foreclose withdrawal or amendment of the admissions."), by emphasizing that the Raiser court found no prejudice "because the moving party was only two weeks late and . . . the non-moving party was merely in the process of preparing its summary judgment motion at that point," Def.'s Resp. 5; see also Raiser, 409 F.3d at 1247 ("Nothing in the record before us shows that [defendant] suffered prejudice sufficient to bar amendment of [plaintiff's] admissions. Only two weeks passed between the due date for [plaintiff's] response and the date that he filed his initial motion to amend his admissions or allow an untimely response."). Defendant notes that, unlike the facts presented in Raiser, here the parties' briefing of their respective motions for summary judgment concluded "over a month before plaintiff filed this motion." Def.'s Resp. 5. As such, defendant maintains that "[p]ermitting the withdrawal of the admissions at this point will require the parties to submit supplemental briefing, which further delays the disposition of this matter." Id.

## III. DISCUSSION

### A. Application of RCFC 36(b) and Pertinent Case Law

The court is not persuaded by plaintiff's arguments. First, plaintiff adopts conflicting positions concerning the impact these admissions have upon its case. On the one hand, plaintiff argues that these admissions would (1) "make West Bay's entire claim against the Defendant moot," Pl.'s Mot. 5; (2) "practically eliminate[] any presentation of the merit of the case," id. at 10; and (3) result in the "undesirable outcome of this Court relying on ultimate fact and false statements to determine the merit of the case," id. at 8. On the other hand, plaintiff maintains that the flooring manufacturer's recommendations implicated by request for admission number 13 are a "non-issue." Id. at 7. Plaintiff cannot have it both ways. Similarly, plaintiff states in its motion that "[b]oth the cross-motion and the proposed findings of uncontroverted fact rely on the deemed admissions to the Defendant's Requests for Admissions No. 10 and No. 13." Id. at 4; see also McInerney Decl. ¶ 5 ("Both the cross-motion and the proposed findings of uncontroverted fact rely on the deemed admissions to the Defendant's Requests for Admissions No. 10 and No. 13."). Yet, in its reply brief, plaintiff concedes that request for admission number 10 "was not relied upon by the Defendant in its motion for summary judgment." Pl.'s Reply 2. Moreover, in its prejudice analysis, plaintiff argues that prejudice "exists only to the extent that this Court relies heavily on these automatic admissions in determining the merit of the motions for summary judgment." Pl.'s Mot. 9 (emphasis added). Based upon these inconsistent statements,[2] the court is not persuaded that denying plaintiff's motion would have the effects plaintiff suggests. As such, plaintiff has failed to demonstrate that the merits of this action will be subserved by withdrawal of the requests.

Second, to avoid a potential adverse outcome that might result from the denial of the instant motion, plaintiff frequently invokes its counsel's "inadvertence," see, e.g., id. at 4 (noting

---

[2] The court notes two additional inconsistencies in plaintiff's briefs. First, plaintiff requests that the court take judicial notice of the fact that defendant filed its cross-motion for summary judgment and proposed findings of uncontroverted facts on October 19, 2007. See Pl.'s Request Judicial Notice Supp. Pl.'s Mot. Withdraw Admiss. ¶¶ 3-4. Yet, in its motion and accompanying declaration, plaintiff states that these filings were made on October 23, 2007, the date upon which plaintiff claims its counsel first discovered that it had failed to respond to defendant's requests for admission. See Pl.'s Mot. 4; McInerney Decl. ¶¶ 5-6. The court takes judicial notice of the fact that defendant attempted to file its cross-motion for summary judgment and proposed findings of uncontroverted facts on October 19, 2007, and, by order dated October 22, 2007, the court directed the Clerk of the Court to file these documents by its leave because they contained a defect that the court determined was "harmless." Therefore, the court is uncertain how plaintiff arrived at the October 23, 2007 date cited in its motion and in its counsel's declaration. Second, as discussed infra, plaintiff's claim that it was unaware of its counsel's alleged inadvertence until October 23, 2007, runs contrary to representations made in the parties' June 14, 2007 joint status report.

"an inadvertence by West Bay's attorneys of record,"); id. at 9 (stating that plaintiff "would not have admitted to these erroneous statements if not for the inadvertence of its attorneys"); Pl.'s Reply 5 ("Defendant should not be allowed to profit from West Bay's inadvertence . . . ."); McInerney Decl. ¶ 4 ("As a result of this office's inadvertences[,] . . . West Bay did not file a response . . . ."), but does not elaborate upon this conduct other than to state that counsel's office "fail[ed] to forward the Request for Admissions to West Bay and fail[ed] to calendar a response date," McInerney Decl. ¶ 4. Plaintiff states that it first discovered its failure to respond to defendant's requests for admission on October 23, 2007, which it represents was the date on which defendant filed its cross-motion for summary judgment and proposed findings of uncontroverted facts. See Pl.'s Mot. 4; McInerney Decl. ¶¶ 5-6. But see supra note 2 (indicating a different date on which these pleadings were filed with the court). Plaintiff's representation to the court that counsel was unaware of plaintiff's failure to respond until October 23, 2007, is wholly disingenuous. As defendant notes in its response, the parties filed a joint status report on June 14, 2007. In that joint report, the parties advised the court that, "[o]n May 3, 2007, defendant propounded requests for admission on West Bay by facsimile and first-class mail. West Bay did not respond to those requests within the time period identified in Rule 36(a)." J. Status Report 2, June 14, 2007 (emphasis added). It is beyond dispute that plaintiff's counsel read and approved the contents of that filing before affixing his signature to it,[3] see id. at 3 (containing plaintiff's counsel's electronic signature). Yet, plaintiff's counsel took no action on or about June 14, 2007, to advise the court of his oversight or to argue excusable neglect.[4] As of

---

[3] In fact, plaintiff's counsel "proposed some minor modifications" to the joint status report, indicated that a revised version was "acceptable," and sent an electronic mail message to defendant's counsel stating that the status report was "ok for filing." Def.'s Consent Mot. Leave Out of Time File J. Status Report ("Def.'s Consent Mot.") 1-2, June 8, 2007. This June 8, 2007 motion also included a proposed draft of the joint status report that was ultimately filed on June 14, 2007. Id. Ex. B.

[4] In Pioneer Investment Services Co. v. Brunswick Associates Ltd., the United States Supreme Court addressed the meaning of "excusable neglect" in the context of the Federal Rules of Bankruptcy Procedure. 507 U.S. 380 (1993). "Neglect," it stated, encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Id. at 388. In determining whether a party's neglect is excusable, the Pioneer Investment Services Co. court concluded that

> the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's mission. These include . . . the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 395 (footnote omitted). Additionally, a determination of excusable neglect "does not turn solely on whether the client has done all that he reasonably could to ensure compliance with a

June 14, 2007, plaintiff's counsel "should have heard alarm bells, but either did not, or did so and did not care." Wallace v. Best W. Ne., 183 F.R.D. 199, 204 (S.D. Miss. 1998).

Even assuming that plaintiff's counsel "only realized in October 2007 that West Bay failed to respond to the requests for admission," defendant argues that "West Bay provides absolutely no justification for waiting another three months, after the parties have completed briefing the summary judgment motions, to move to withdraw the admissions." Def.'s Resp. 7-8. Although mere "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice," Conlon, 474 F.3d at 624, courts have considered all relevant circumstances, Pioneer Inv. Servs. Co., 507 U.S. at 395, including "more than a mere failure to comply with the deadlines," Conlon, 474 F.3d at 624. The Conlon court, for example, affirmed the district court's refusal to withdraw deemed admissions at a late stage in the proceedings because defendant "relied upon admissions for two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that [plaintiff] intended to file a motion to withdraw his admissions." Id.

The same may be said here. Once again, the court notes that plaintiff made no effort to advise the court of its counsel's oversight or to argue excusable neglect immediately after defendant filed its cross-motion. See Wallace, 183 F.R.D. at 204 ("Clearly, by the Joint Case Status Report [and] by defendant's motion for summary judgment, . . . plaintiff had more than sufficient notice of the pendency of this matter, the urgency of a response and the severe impact his failure to respond could occasion." (emphasis added)). Instead, plaintiff waited over a month after the parties concluded briefing their summary judgment motions to address this issue. Indeed, it was not until January 16, 2008, that plaintiff filed the instant motion first bringing this matter to the court's attention. These circumstances are distinguished from those the court encountered in Bishop v. United States, wherein it "decline[d] to deem the late response" by one plaintiff to defendant's request for admission, which was filed one month late, "as a concession." 72 Fed. Cl. 766, 772 (2006). The Bishop court noted that defendant did not argue plaintiff's failure to timely respond amounted to an admission "until it filed its response and cross-motion for summary judgment on August 11, 2005, nearly eleven months after the deadline for the 'Request for Admission' had passed." Id. As such, defendant's failure to pursue the claim earlier, the court reasoned, "suggests a lack of prejudice." Id.; see also Carlsen v. United States, 72 Fed. Cl. 782, 791 (2006) (finding no prejudice where plaintiffs' responses were filed "on various dates within a couple of months from the due date"). Here, plaintiff failed to even raise the issue for over seven months. Additionally, defendant's counsel, unlike the counsel in Bishop, did not wait nearly eleven months to claim that plaintiff failed to timely respond. The June 14, 2007 joint status report unequivocally states that plaintiff "did not respond" to defendant's requests for admission. Despite reading and approving the language contained therein, see supra note 3 and accompanying text, plaintiff waited an additional seven months before attempting to furnish responses and claiming its failure to respond was inadvertent. As such, the court is

deadline; the performance of the client's attorney must also be taken into account." Allen v. Murph, 194 F.3d 722, 724 (6th Cir. 1999).

satisfied that defendant would be prejudiced by plaintiff's withdrawal of its deemed admissions to the requests.

### B. Additional Factors Considered by the Court

As discussed above, courts may consider a party's prior conduct during the course of litigation as part of their Rule 36 inquiries. See Dukes, 590 F. Supp. at 1168 (noting plaintiffs' previous failure to respond timely and stating that plaintiffs "have been evasive and dilatory throughout the pendency of this cause"). In this case, defendant argues that plaintiff's failure to respond to its requests for admission "is consistent with its pattern of non-compliance with the Court's rules," and is not merely "an isolated incident of 'inadvertence.'" Def.'s Resp. 7. A review of plaintiff's conduct indicates that its "inadvertent" failure to respond to defendant's requests for admission comports with defendant's claim that plaintiff has engaged in a "consistent[] dilatory pattern of litigation and attitude towards compliance with its discovery obligations." Id. at 6.

During the course of this litigation, defendant has documented several instances in which plaintiff's counsel has failed to timely respond to defendant. For example, in its June 8, 2007 consent motion, defendant represented that plaintiff neither filed a joint status report as requested nor filed a motion for extension of time to file the joint status report. Def.'s Consent Mot. 2; see also id. at 1-2 (documenting unsuccessful attempts to reach plaintiff's counsel via telephone); Def.'s Mot. Enlargement Time 1-2, Nov. 9, 2005 (indicating that defendant's counsel left two voice messages for and transmitted one electronic mail message to plaintiff's counsel and received no response). Additionally, defendant filed three unopposed motions to extend the discovery deadline. In each instance, defendant represented that enlargements of time were necessary due, in whole or large part, to delays caused by plaintiff. See, e.g., Def.'s Unopposed Mot. Enlarge Disc. Period 1, Sept. 8, 2005 (stating that plaintiff "has not provided responses to defendant's formal discovery requests"); Def.'s Second Unopposed Mot. Modify Scheduling Order 1-2, May 5, 2006 (noting that, in addition to a request for an enlargement of time such that defendant's new counsel could become familiar with the case, plaintiff's production of certain documents was delayed because plaintiff desired a protective order, a draft protective order was transmitted to plaintiff's counsel in January 2006, defendant filed a motion to compel production of those documents in April 2006 after the protective order was not filed, and a joint motion for protective order was not filed until May 2, 2006);[5] Def.'s Third Unopposed Mot. Modify Scheduling Order 1-2, Nov. 13, 2006 (requesting an enlargement of time because, although the court entered a protective order on May 5, 2006, "plaintiff did not produce the remaining

---

[5] In a May 5, 2006 order, the court denied as moot defendant's motion to compel, which alleged that plaintiff was unresponsive regarding a proposed protective order, because the parties ultimately filed a joint motion for a protective order.

documents until mid-October").[6] Courts have found that such "serial tardiness" is inexcusable. See, e.g., Kelvin Cryosystems, Inc. v. Lightnin, No. 05-4880, 2007 WL 3193731, at *1-2 (3d Cir. 2007) (affirming the district court's denial of plaintiff's motion to accept late answers to requests for admission where (1) plaintiff was ordered four times over the course of six months to produce documents, (2) the district court considered plaintiff's "failure to abide by deadlines despite the District Court's warning that future untimeliness could result in waiver or sanctions," (3) plaintiff furnished responses sixty-nine days after it was served and thirty-nine days after the response was due, and (4) plaintiff failed to respond to defendant's second set of requests for admission).

The critical timeline in this case is clear. As explained previously, defendant served its requests for admission on May 3, 2007. According to the RCFC, plaintiff's responses were due on June 4, 2007.[7] The parties' joint status report, filed on June 14, 2007, documented that plaintiff's responses were overdue. Defendant attempted to file its cross-motion for summary judgment and proposed findings of uncontroverted facts on October 19, 2007, and the court directed the Clerk of the Court to file these documents by its leave on October 22, 2007. Defendant's proposed findings of uncontroverted facts and memorandum in support of its motion, as well as its reply brief, specifically rely upon plaintiff's deemed admissions. These irrefutable facts notwithstanding, plaintiff did not file its motion to withdraw admissions until January 16, 2008, nearly seven and one-half months after its answers were due. Plaintiff's counsel's failure to make the appropriate motion at an earlier date is inexcusable.

Equally troubling to the court are plaintiff's counsel's misrepresentations regarding when he first became aware that answers to defendant's requests for admission were overdue. In addition, the court finds that counsel has demonstrated a lack of candor. Specifically, plaintiff's

---

[6] On October 10, 2006, defendant renewed its motion to compel because plaintiff had not produced documents. See Def.'s Renewed Mot. Compel Produc. Docs. 1-2, Oct. 10, 2006 (alleging that defendant "has received no documents in response to its document request or any indication that production is forthcoming"). In its order dated October 20, 2006, the court granted defendant's unopposed motion to withdraw its renewed motion to compel after plaintiff produced various documents that appeared to be responsive to defendant's requests. According to defendant, "counsel for defendant received 255 pages of documents . . . which West Bay did not mark[] as subject to this Court's May 5, 2006 protective order," Def.'s Unopposed Mot. Withdraw Def.'s Renewed Mot. Compel Produc. Docs. 1, Oct. 20, 2006 (emphasis added), "thus calling into question whether West Bay had a good faith basis for withholding the documents for nearly a year and a half," Def.'s Resp. 7.

[7] The thirty-day period for plaintiff to respond to defendant's requests for admission fell on Saturday, June 2, 2007. Pursuant to RCFC 6(a), which governs the computation of "any period of time prescribed or allowed by these rules," the last day of the period "shall be included, unless it is a Saturday, a Sunday, or a legal holiday, . . . in which event the period runs until the end of the next day which is not one of the aforementioned days." Therefore, plaintiff's responses were due on June 4, 2007.

counsel failed to address defendant's argument that, by no later than the filing of the June 14, 2007 joint status report, plaintiff was on notice that requests for admission remained overdue. Plaintiff's counsel cannot insulate himself or his client from adverse results by burying his head in the sand. A competent counsel reviewing a draft joint status report would not overlook that his adversary alerted the court of the failure to respond to discovery. Surely such a representation would spur into action the nonresponsive party. Here, plaintiff's counsel never defended by claiming nonreceipt of defendant's requests for admission. Rather, plaintiff's counsel simply states that, due to an "inadvertence," he neither forwarded defendant's requests for admission to his client nor calendared a response due date. Pl.'s Mot. 4; McInerney Decl. ¶ 4. Under these circumstances, plaintiff's counsel's clear disregard for his discovery obligation is characterized fairly as careless, dilatory, and negligent. As the Branch Banking & Trust Co. court recognized, "there is a point at which the benefit derived from allowing withdrawal . . . of an admission is outweighted by the effect of an inevitable postponement of a final decision in the matter at a late hour." 120 F.R.D. at 659; see also RCFC 1 (requiring that the rules of the court "be construed and administered to secure the just, speedy, and inexpensive determination of every action). That point has been reached in this case, and plaintiff must bear the consequences. See Pioneer Inv. Servs. Co., 507 U.S. at 396 ("[W]e have held that clients must be held accountable for the acts and omissions of their attorneys.").

**C. Plaintiff's Remaining Deemed Admissions**

Lastly, plaintiff indicates that it "will agree not to withdraw" the remaining deemed admissions that are not the subject of the instant motion. Pl.'s Reply 5. Plaintiff's proferred responses to defendant's thirteen requests for admission, which were filed with the instant motion as Exhibit D on January 16, 2008, indicate that plaintiff would admit, with objections and qualifying language, the remaining eleven requests for admission that are not the subject of its motion. See McInerney Decl. Ex. D. Defendant argues that plaintiff already admitted to those facts in its responses to defendant's proposed findings of fact and that those judicial admissions should "take precedence over West Bay's untimely filed, and inconsistent, responses to the defendant's requests for admission." Def.'s Resp. 4. To the extent that plaintiff's concession can be construed as a proposed remedy by which each litigant receives only "half a loaf," the court declines to follow that path. RCFC 36(a) deems each matter of which an admission is requested admitted unless, "within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing," the party to which the request is directed serves a written answer or objection. RCFC 36(a) (emphasis added). The court did not permit plaintiff to file its January 16, 2008 response to defendant's requests for admission, and defendant did not agree in writing to accept any response on that date. Therefore, because plaintiff has waived its objections for failure to timely respond, all thirteen requests for admission are deemed admitted.

## IV. CONCLUSION

For the reasons set forth above, the court determines that withdrawal of plaintiff's deemed admissions to the requests at issue would prejudice defendant and would not serve the presentation of the merits of this action. Accordingly, plaintiff's Motion to Withdraw Admissions is **DENIED**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge