IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WEST BAY BUILDERS, INC., Plaintiff, v. THE UNITIED STATES, Defendant, | No. 04-1140C (Judge M. Sweeney) |

**PLAINTIFF'S SUR-REPLY TO EVIDENCE IN GOVERNMENT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff West Bay Builders ("West Bay") respectfully submits this Sur-Reply in response to evidence and arguments submitted by Defendant the United States ("the Government") in the Defendant's Reply in Support of Cross-Motion for Summary Judgment. Pursuant to the Court's March 14, 2008 Order, this Sur-Reply will be limited to responding to the following three issues: (1) The Declaration of Gary Geisenhofer ("Geisenhofer Decl.") (2) Contract Drawing A60 (DA 63); and (3) Reference and argument to "two types of sealants." (Government's Reply, p. 3).

The Government's evidence is not relevant to the interpretation of Section 09880 of the contract specifications requiring testing to determine the necessity of moisture sealant. In fact, the Government did not reference any of the above evidence or make the related arguments during the construction of Project or in response to West Bay's claim. Each of the above arguments is inconsistent with the Government's previously-held positions concerning its interpretation of contract specifications. The Government's inconsistent positions are in sharp contrast with the position maintained by West Bay pertaining to the central issue of this litigation, which is that the application

of moisture sealant is required only when testing shows emission levels to be 15 lbs or more.

## ARGUMENT

### A. The Declaration of Gary Geisenhofer

In its Reply, the Government attempts to use Mr. Geisenhofer's Declaration to argue that had West Bay participated in the walkthrough, it would have known that there was "visible moisture damages to floor tiles" and that West Bay would have included a more substantial dollar value for the application of moisture sealant in West Bay's bid for the Project.

The Government's arguments are speculative and not relevant to the central issue of contract interpretation. Mr. Geisenhofer's statement that there were "broken tiles and dark joints between tiles" is irrelevant to West Bay's claim that the application of sealant to the entire floor area was extra work. The contract specifications required the contractor to perform moisture emission testing to determine whether the sealant is applied.[1] In other words, whether the application of the floor sealant is within the scope of the contract is determined by whether the results of the moisture emission test is 15.0 lbs or more, not whether there was "visible moisture damages to floor tiles".

During the course of the Project, the Government on multiple occasions agreed with West Bay's plain-meaning interpretation of Section 09800. For example, the Government's May 2, 2002 e-mail stated that "[t]he spec section 09800, section 1.02, para. A, confirms the contractor's statement" that "section 09800…is to apply only

[1] Paragraph 1.02.A of Section 09800 of the Contract Specifications states that the application of the sealant "shall reduce emission levels to within 3 lbs, and should be installed in all cases <u>where the starting calculation is 15.0 lbs or more</u>" (Emphasis added). PFUF ¶3; Exhibit B to Vierra Decl.

where the starting calculation is 15.0 lbs or more." See Exhibit F to Vierra Decl.: Armando Binsol's May 2, 2002 e-mail. The Government also previously agreed that West Bay's position was meritorious and agreed to pay all of West Bay's requested costs for the application of the sealant. See PFUF ¶22. Not once during the course of the Project did the Government bring up the issue of attendance at the walk-through.

The Government's new argument concerning the walk-through and Mr. Geisenhofer's statements is another example of the Government's inconsistent positions concerning the interpretation of the Specifications. The Government's initial position was that the contract requires the contractor to skip all testing and to apply floor sealant to the entire area of the Project pursuant to Amendment #4. See PFUF No. 19; and Exhibit K to Vierra Decl. Then, after a "lengthy review of the merit" of West Bay's claim, the Government found no patent ambiguity and approved West Bay's claim that the application of the floor sealant is outside the scope of the contract. See PFUF No. 22. Months later, the Government changed its position again, stating that patent ambiguity exists in the contract. See Defendant's Response and partial Admission to PFUF ¶25 and Exhibit P to Vierra Decl. Then the Government's Final Decision of the Contracting Officer resorted to the alleged contract requirement that the floor "be sealed to 3 lbs assuming a 15 lb moisture accumulation overall." See PFUF No. 27. In the Government's Cross-motion, the Government changed its position once more and stated that Amendment #4 "does not provide clear instructions", and is confusing and patently ambiguous. See VA's Cross-motion, p.11. Now, the Government's Reply resorts to yet another new position, which essentially argues that West Bay should have assumed sealant application was within the scope of the contract based on the alleged

conditions of the floor tiles during the walk-through without reference to the contract terms.

In fact, the moisture test results from 1999, as well as six other moisture test results from 2002, showed that the emission levels on the Project to be well below the 15.0 lbs threshold under section 09800. PFUF ¶¶4 and 6. These test results conformed with West Bay's reasonable expectation that sealant application is not within the scope of the contract specifications. These test results also directly contradict the Government's new argument that "visible moisture damages to floor tiles" essentially require the contractor to apply floor sealants to the entire Project.

The Government's argument is unpersuasive. Whether West Bay took a reasonable and educated risk in its bid for the Project is not relevant to the interpretation of section 09800 and other provisions. West Bay was fully ready to perform the extra work at no extra cost to the VA if the test results show existing emission levels to be 15 lbs or more. This was the risk that West Bay was ready to bear based on its interpretation of contract specifications and its assessment of the Project. As previously mentioned, at least seven moisture emission test results from 1999 and 2002 conform with West Bay's reasonable and correct expectation that sealant application was not required on the entire floors of the Project. It is unreasonable and inconsistent for the Government to now rely on the alleged visible conditions of the Project during the walk-through, when seven moisture emission test results show that West Bay had acted reasonably and prudently in its bid and performance of the contract.

\\\

\\\

**B. Contract Drawing A60 and related argument.**

The Government submitted Contract Drawing A60 in support of its argument that the drawing "clearly require[d] installation of moisture barrier sealant….regardless of any initial moisture test results." (VA's Cross-motion, p. 10.) The Government added in its Reply that "[t]he floor plan legend outlined all areas on the first floor which were to be considered new work areas; these are the areas in which West Bay ultimately installed the moisture barrier." (VA's Reply, p.10-11).

The Government's reading of the Drawing A60 and the floor plan legend is incorrect. The Government is mistaken in equating the term "new work areas" under the General Keyed Plan Notes with the shaded section showing the area for installation of new floor covering materials under the floor plan legend. The plain-reading of the floor plan legend, the General Keyed Plan Notes, and other provisions of the specifications indicate that the "new work areas" under the General Keyed Plan Notes refer to the areas of new concrete to be applied to the Project, which are distinct from the areas where new floor covering materials were to be applied.

The floor plan legend indicates areas in which the contractor needs to perform removal of existing floor coverings and installation of different types of flooring materials such as VCT (vinyl composition tiles), carpet, or quarry tiles. For example, the floor plan legend referenced and described the majority of the shaded area in the drawing as follows:

> -REMOVE (E) VCT FLOORING AND
> INSTALL NEW VCT FLOORING

(See DA 63.)

The General Keyed Plan Notes, on the other hand, state:

> 2. PROVIDE MOISTURE BARRIER AT ALL NEW WORK AREAS AT 1ST FLOOR CONCRETE SLAB PRIOR TO INSTALLATION OF NEW FINISH. SEE SPECIFICATION 07260. (AMENDED TO 9800).

(Defendant's PFUF ¶1; emphasis added).

The Government attempts to equate areas designated by the floor plan legend as "all new work areas at 1st floor concrete slab." This misreading of the drawing is not supported by the General Keyed Plan Notes nor the floor plan legend. Paragraph 2 of the Plan Notes asks the contractor to apply floor sealant at new work areas "at first floor concrete slab" and refers the contractor to section 7260. Paragraph 2 of the General Keyed Plan Notes does not characterize the various flooring installations as "first floor concrete slab," rather, it refers the contractor to Section 9800 of the Contract Specifications, which instructs the contractor to apply sealant only when the emission test result is 15.0 lbs or more. The Government fails to cite any section from the Contract Specifications that equate floor covering installation with "new work areas at 1st floor concrete slab."

Furthermore, this argument equating "new work areas at first floor concrete slab" with installation of new floor covering materials was never made during the construction. As mentioned in the above section, the Government had previously agreed with West Bay's interpretation of the testing requirement in the Specifications. Had the Government intended the contractor to apply floor sealants on all floor areas where the contractor was removing and installing new floor covering materials, it could have simply stated that in the Specifications. Instead, the Government now resorts to yet another inconsistent argument in an effort to deny the straight-forward fact that sealant

is to be applied only when moisture emission level is 15.0 lbs or more under the contract.

**C. References and arguments to "two types of sealants" and portions of West Bay personnel's deposition testimony.**

The Government argued that the Specifications required West Bay to apply sealants on all floor areas of the Project regardless of test results, but Section 9800's testing requirement is solely about the application of an additional and heavier type of sealant when the emission test result is greater than 15.0 lbs. The Government argues that Section 9800's testing requirement does not render West Bay's interpretation more reasonable.

The Government's strained interpretation of Section 9800 is again unpersuasive and inconsistent with the other positions previously held by the Government pertaining to this issue of the testing requirement under Section 09800. As mentioned above under section A of this brief, the Government's initial position was that the contract requires the contractor to skip testing and to apply floor sealant to the entire area of the Project pursuant to Amendment #4. Then the Government found no patent ambiguity in the specifications and approved West Bay's claim that the application of the floor sealant is outside the scope of the contract. Later the Government's Final Decision of the Contracting Officer resorted to the alleged contract requirement that the contractor skip testing and to assume a "15 lb moisture accumulation overall." Now the Government is essentially alleging that there is testing requirement under the specifications, but it is to be conducted only to determine whether the heavier type of sealant is to be applied.

The Government's new position is not only inconsistent with its previous positions pertaining to this issue. If the Government was correct in its interpretation of Amendment #4, which allegedly requires West Bay to skip testing and to assume a "15 lb moisture accumulation overall," then there is really no need for West Bay to conduct any testing to determine whether a heavier type of sealant is to be utilized. Yet the Government is now characterizing section 09800 as requiring the contractor to test for the sole purpose of determining whether an additional and heavier type of sealant is to be used where the moisture level is greater than 15 lbs. It makes no sense to ask the contractor to assume the moisture emission level to be 15 lbs so that all floor areas are to be sealed, and then ask the contractor to test to see if a heavier type of sealant is to be used where the emission level is 15 lbs. The heavier type of sealant should be applied automatically if the contractor is to assume the moisture level of15 lbs. There is no need to include any testing requirement under the contract specifications.

West Bay does not dispute that different types of sealant may be applied depending on differing levels of moisture emission. However, the application of different types of sealant does not negate the contract's specific instructions that sealant is to be applied only "where the starting calculation is 15.0 lbs or more." Section 9800 expressly governs the application of "floor concrete moisture sealant" on the Project, not only a particular type of heavy sealant where the emission level is 15.0 lbs or more.

Paragraph 2.4 of Section 9660, which also deals with sealant application on the Project, states: "Seal for moisture content of 15 lbs. Contractor to provide testing to verify moisture level. See Specification 09880…" Paragraph 2.4 supports West Bay's position that the contractor is required to perform testing, and then to apply sealant only

when testing result shows moisture content of 15.0 lbs or more. In other words, neither section 9800 nor section 9660 supports the Government's strained interpretation that the testing requirement is only about requiring the contractor to apply a heavier type of sealant, and that the application of sealant in all floor areas is within the scope of the original Contract Specifications.

The Government attempts to reference the deposition testimony from West Bay's personnel to support its interpretation (See Government's Reply, pp. 3-4; DA 32, 58). However, the testimony cited by the Government does not support the Government's interpretation. Clayton Fraser stated in his deposition that "…it's a standard spec…If the results are greater than 15, you're supposed to apply this – this floor sealant, which reduces the moisture level, which required for certain floors so they don't bubble up." (DA 58; Deposition of Fraser, p. 24: lines 7, 10-13.) Kurtis Vierra's testimony discussed generally the warranty requirement of flooring manufacturers. (DA 32) Neither Mr. Fraser nor Mr. Vierra's testimonies supports the Government's argument that sealant application to all areas of the Project is within the scope of the specifications, and that the specification's testing requirement under section 09800 refers only to a heavier type of sealant. (See the Government's Cross-motion, p. 18).

Again, West Bay does not dispute that different types of sealant may be applied depending on differing levels of moisture emission. Section 09800, which requires the contractor to test in order to determine whether any sealant is to be applied on the Project, does not contradict the position that a heavier type of sealant may generally be required depending on differing levels of moisture emission. Neither does Section 09800 affirm the Government's position that West Bay is required to apply one type of

sealant to all areas of the Project regardless of test results, while a heavier type of sealant is to be applied based on the testing requirement under Section 09800. (See the Government's Cross-motion, p. 18).

## CONCLUSION

Based on the foregoing, West Bay respectfully requests that this Court grant West Bay's Motion for Summary Judgment, and deny the Government's Cross-motion for Summary Judgment.

Respectfully submitted,

/s/ Timothy L. McInerney

Timothy L. McInerney
McInerney & Dillon PC
1999 Harrison Street
Oakland, CA 94612
(510) 465-7100
(510) 465-8556

Attorneys for Plaintiff

Dated: March 24, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2008, I electronically filed the foregoing Plaintiff's Sur-Reply, with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Tara Kathleen Hogan**
U. S. Department of Justice
Civil Division- Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530
(202) 307-1011
(202) 514-8624 (fax)
tara.hogan@usdoj.gov

/s/ Timothy L. McInerney
Timothy L. McInerney